# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

SECOND DISTRICT—MAY TERM, 1882.

## THE ILLINOIS CENTRAL RAILROAD COMPANY
### v.
### LANDON BETHEL.

1. WATER-COURSES—CONSTRUCTION OF RAILROAD OVER—GENERAL DUTY.—An individual or corporation constructing a road, pursuant to legislative authority, over water-courses on private land, is bound to make suitable bridges, culverts, or other provision for carrying off the water effectually, and to keep them in suitable repair for the purpose if practicable.

2. WHAT IS REASONABLE CARE IN CONSTRUCTION.—What will be deemed reasonable care in respect to the construction or repair of such bridges, is, that the corporation shall bring to the construction or repair all the engineering knowledge, skill and care ordinarily applied to works of like kind, in view of the size and habits of the stream, and the character of its channel—such as are deemed sufficient to avoid all danger from such stream, in connection with such works, in all ordinary floods or freshets.

3. ORDINARY FLOODS—WHAT IS MEANT.—By ordinary floods is understood all usual and expected freshets occurring in the stream. By extraordinary floods, freshets not occurring annually.

4. NOT LIABLE FOR DAMAGE FROM EXTRAORDINARY FLOODS.—Where a corporation has exercised ordinary care in the construction or repair of bridges and culverts over water-courses on private land, and is not otherwise guilty of negligence, it can not be made liable for damages occasioned an adjacent proprietor by extraordinary floods choking or washing out the channel of the stream.

5. CONSEQUENTIAL DAMAGE.—If the construction over the water-course was not improperly done, and it was washed out by an extraordinary flood,

leaving debris upon the land of an adjacent owner, beyond the line of the company's right of way, the company is not bound to remove such material; and if by reason of it being so lodged, the waters of the stream were diverted in a subsequent freshet whether extraordinary or only ordinary, it gives no ground of action to the adjacent owner for damages resulting from the last flood.

APPEAL from the Circuit Court of Jo Daviess county; the Hon. WILLIAM BROWN, Judge, presiding. Opinion filed May 31, 1882.

Mr. WILLIAM BARGE and Mr. R. H. McCLELLAN, for appellant; that appellant was only required to construct the bridge with such care and skill as to make it sufficient for all ordinary floods and freshets, cited P. Ft. W. & C. R. R. Co. v. Gilleland, 56 Penn. 445; Henry v. Vt. Cen. R. R. Co. 30 Vt. 638; Sprague v. City of Worcester, 13 Gray, 193; Withers v. North Kent R. R. Co. 3 H. & N. 969; Nichols v. Marshland, 2 Exch. 1; Same case, 10 Exch. 255; Smith v. Agawam Canal Co. 2 Allen, 355; Town of China v. Southwick, 12 Me. 238; Monongahela Nav. Co. v. Coon, 6 Barr, 383; McCoy v. Donley, 20 Pa. St. 85; Burwell v. Hobson, 12 Gratt. 322; Strout v. Millbridge Co. 45 Me. 76; Angell on Water-courses, § 348; Washburn on Easements, 327.

The flood causing the damage in question was an act of God, for which appellant can not be made liable: P. Ft. W. & C. R. R. Co. v. Gilleland, 56 Pa. St. 445; Blythe v. Birmingham Water-works, 11 Exch. 781; McGreem v. Stone, 53 Pa. St. 436; Libezy v. Philadelphia, 64 Pa. St. 106; Denny v. N. Y. C. R. R. Co. 13 Gray, 481; Railroad Co. v. Reeves, 10 Wall. 176; Morrison v. Davis, 20 Pa. St. 171; Wharton on Negligence, § 557.

The uninterrupted enjoyment of a right for the statutory period of twenty years is a complete defense to an action of this kind: Angell on Water-courses, § 203; Angell on Limitations, § 300; Bealy v. Shaw, 6 East, 208; Balston v. Benstead, 1 Camp. 416; Carlyon v. Lovering, 1 H. & N. 784; White v. Chapin, 12 Allen, 516; Bolivar Mfg. Co. v. Neponset Co. 16 Pick. 241; Ashley v. Ashley, 4 Gray, 197; Cary v. Daniels, 5 Met. 239; Baldwin v. Calkins, 10 Wend. 167; Stiles v.

Hooker, 7 Conn. 266; Corning v. Gould, 16 Wend. 530; Hazard v. Robinson, 3 Mason, 272; Wallace v. Fletcher, 10 Foster, 434; Kuhlman v. Hecht, 77 Ill. 570; Hill v. Ward, 2 Gilm. 285; City of Quincy v. Jones, 76 Ill. 231; Hill v. Crosby, 2 Pick. 466; Winnipiseogee Lake Co. v. Young, 40 N. H. 433; Addison on Torts, § 121: Washburn on Easements, § 70.

Messrs. D. & T. J. Sheean, for appellee; that every throwing of water over another's land is actionable, and though lawful, if it creates damage he is entitled to reparation, cited Stout v. Adams, 2 Scam. 67; Jacksonville v. Lambert, 62 Ill. 519; Nevins v. Peoria, 41 Ill. 510; Brown v. C. & S. R. R. Co. 2 Kernan, 486; Boughton v. Carter, 18 Johns. 405.

If there be any co-operation of man, or any admixture of human means, the injury is not, in a legal sense, the act of God: Michels v. N. Y. C. R. R. Co. 30 N. Y. 571.

After judgment on demurrer there can be no motion in arrest of judgment for causes that might have been insisted upon in demurrer: Am. Ex. Co. v. Pinckney, 29 Ill. 405; Quincy Coal Co. v. Hood, 77 Ill. 68.

Pleasants, P. J. The declaration in this case contained three counts, in substance respectively as follows:

The first alleged that the defendant, appellant, was the owner of a railroad, running across the East Fork of the Galena R. on the E. ½, N. W. ¼, 2, 28, 1 east, in Jo Daviess county, which belonged to plaintiff; that at said crossing is a valley or deep ravine about 1,000 feet in width; that in constructing said road defendant built a solid earth embankment across said valley and partly across said stream, leaving a short bridge with two stone abutments for the passage of the water, thus forcing it through a narrowed channel and thereby giving it greater force and velocity; that afterward, about A. D. 1875, it wrongfully placed large quantities of gravel, stone and rock in the bed of said stream; that on the night of July 12, 1878, a heavy rainstorm greatly swelled its waters, which were in consequence unable to pass freely through said bridge, and being forced by said embankment through a nar-

row space, carried said gravel, etc., upon plaintiff's land, and caused it to be overflowed, and washed off large quantities of the soil, and damaged and destroyed said land and the crops then growing thereon. The second alleges that about 1875 defendant wrongfully placed large quantities of gravel, stone and rock in the bed of said stream above said land of plaintiff, thereby obstructing the free passage of the water therein; that on the night of July 12, 1878, a heavy rainstorm greatly swelled said stream, which in its descent removed said gravel, etc., and heaped the same together in its bed so as to divert it from its natural channel, and that defendant wrongfully, carelessly and negligently permitted the same to remain so heaped, obstructing and diverting the passage of said water; that on Sept. 2, 1878, another heavy rainstorm caused a great swelling of said waters, which in passing toward said land of plaintiff were by reason of said obstruction thrown out of their channel and over said land, and damaged and destroyed the crops and soil.

The third is the general count in trespass *quare clausum fregit*. Pleas of not guilty, the statute of limitations, license and prescription, respectively, were filed.

To the last named a general demurrer was sustained, and upon issues joined on the others a trial was had, resulting in a verdict for the plaintiff for $400 damages.

A motion to set it aside was overruled and judgment entered; from which defendant appealed, and upon the record brought here assigns divers errors.

It appears that at the crossing mentioned the natural depth of the stream in its ordinary stage was about six inches, its width from ten to twelve feet, and that of its bed, between the bank lines, from twenty-five to thirty. From the depth and width of the valley as stated in the declaration and shown by the evidence, a railroad track crossing it must be laid at a considerable elevation above its surface, upon arches, piers, trestles or solid embankment, or some combination of them. The defendant had a chartered right to locate its road where it was, and as a necessary consequence to cross the stream and valley in a proper way, upon what were for that purpose its

own land and structures.  Hence, also, it was not only its right, with reference to its own interest as such proprietor, but its duty with reference to persons and property carried upon the road, to take all needful measures, consistent with a due regard to the rights of others, to maintain such structures in a safe condition.

The embankment and bridge described in said first count were finished as early as the year 1854, and used as a part of appellant's railroad from that time, without interruption or material change, until July, 1876.  The space between the abutments was thirty-nine feet.  At different times before that last mentioned, rock and stone had been placed about the bases of those abutments and in the bed of the stream adjoining, where it had been washed out, to protect them against the danger of being undermined by the natural course and action of the waters, but no injury had been caused by said embankment, abutments or rock and stone, or by their diversion or obstruction of said stream, to crops or lands or other property in their vicinity, until the time last above mentioned.

Whether the first count of the declaration sufficiently charges that the erection of these works in the manner therein stated was wrongful, may well be doubted.

It avers that their effect was to narrow the channel and thereby increase the force and velocity of the stream at that point, but the extent of such increase is not stated, nor is it alleged that it was or would be injurious in any conditions of said stream to be reasonably anticipated.  Indeed we can hardly suppose that such a charge was intended.  Otherwise it would be difficult to understand upon what ground a general demurrer was sustained or interposed to the plea of prescription.  But if it was, we infer from the instructions asked and given on behalf of the plaintiff, and from the argument here, that it was abandoned; as well it might be, in view of the law and the evidence produced on the trial.  An individual or company constructing a road, pursuant to authority given by the Legislature, over water-courses on private land, is bound to make suitable bridges, culverts or other provision for carrying off the water effectually, and to keep them in suitable repair for that purpose, if practicable.

These duties must necessarily be implied, because it must be presumed that the Legislature could not have intended to grant an authority to enter upon and take private lands for public use upon any other terms. The extent and limits of such duties can only be determined by considering what is reasonable in each case and if there should happen to be private property so situated that some damage must be done to it which can not be obviated by reasonable precautions, inasmuch as it is expressly authorized by. the Legislature the proprietor must be left to seek his compensation in the mode provided by such Legislature. Angell on Water-courses, Sec. 465, b, and cases cited in the notes. " Undoubtedly great latitude of discretion is to be allowed to those who are entrusted by law with the erection and maintenance of great public works in the location and mode of construction which they may adopt to effect the objects and purposes to be accomplished under their authority. So long as they act in good faith, within the scope of the powers granted to them, without being guilty of negligence, carelessness or wanton disregard of the rights of individuals, they will be protected from all liability except in the mode and by the process fixed by the statute under which they act." Mellen v. Western R. R. Corp'n, 4 Gray (Mass.), 303. That case was not unlike the one at bar, as appears from the declaration which charged the obstruction of the stream by abutments, embankments and large quantities of stone, etc., thrown into it with malicious intent to deprive the plaintiff of the use and profits of fifty acres of his meadow.

What is deemed reasonable precaution with respect to suitable bridges, culverts or other provision for carrying off the water effectually, absolving the party constructing such road from all just imputation of negligence, carelessness or wanton disregard of the rights of individuals, is that he or it bring to their setting and construction all the engineering knowledge, skill and care ordinarily applied to works of like kind in view of the size and habits of the stream, the character of its channel, and the declivity of the circumjacent territory forming the water-shed; and what are deemed suitable works are such as

are sufficient to avoid all danger from such stream, in connection with such works, in all ordinary floods or freshets. The P. Ft. W. & C. R'y Co. v. Gilleland, 56 Pa. St. 445; McCoy v. Danley, 20 Id. 85, 89; Bollinger v. N. Y. C. R. R. Co. 23 N. Y. 42; Sprague v. City of Worcester, 13 Gray, 193; Town of China v. Southwick, 12 Maine, 238; Redfield on Railways, 157, 170, 171, and cases there cited.

By ordinary floods are understood all usual and expected freshets occurring in the stream, McCoy v. Danley, *supra;* its usual conditions at all seasons of the year, Sprague v. City of Worcester, *supra;* ordinary periodical freshets, Bell v. McClintock, 9 Watts. 119; usual and always to be expected in certain seasons in each and every year, Cowles v. Kidder, 34 N. H. 364, 381. And by extraordinary floods, freshets not occurring annually. Sprague v. City of Worcester, *supra.*

That such reasonable precaution was taken in the case at bar, and that the bridge in question was sufficient to withstand and that the opening left was sufficient to pass, without injury to others, all the waters of this stream in all its stages and conditions not in the legal sense extraordinary, is fully shown by the opinions of experts and by the more reliable test of a long experience.

The other if not the only wrongful act charged in this count is the placing by appellant of gravel, rock and stone in the bed of the stream. Construing the allegation most strongly against the pleader the wrong charged consists, not in the manner of so placing them, for it is not particularly described, nor even generally as negligent; nor in the quantity so placed, although stated to have been large, for that is not definitely set forth, nor is its wrongfulness indicated by charging its effect as injurious in conditions of the stream to be reasonably anticipated, that is, in ordinary floods or freshets, as it ought to be if the wrong depended upon the quantity; but in the act of placing them in the bed of the stream, irrespective of the manner or quantity—the language being that the defendant, about the year 1875, " wrongfully placed large quantities of gravel, stone and rock in the bed of the river of said East Fork of Galena River." In other words, the charge is that

the placing of gravel, etc., in the bed of the stream was of itself without right.

This the court can not see from the averments as made.

As above stated, the right to maintain and protect the works is included in the right to construct them, and the rule and measure of duty in respect to the means to that end is the same as that which governs in their construction. Unless these were of themselves, or in the manner of their use, such as to jeopardize the property or rights of others in ordinary floods which are to be reasonably anticipated, they would not be wrongful; and that they were is not averred. The evidence shows that by a freshet in the fall of 1871, not extraordinary in its character, the bed of the stream at the crossing by the railroad on plaintiff's land was washed out to an extent endangering the abutments of the bridge; and that to protect them about forty car loads of rock and stone, averaging fifty pounds and going up to three hundred in weight, were placed about them and in the bed of the stream adjoining, filling it up between them for a short distance above and below, within appellant's right of way, to the surface of the water as it then was—being at a low or at most an ordinary stage. Whether this was as high as the surface at the same stage before the washout, or how much below the bank lines, does not appear. But the division superintendent in charge of the work testified that it did not then obstruct the flow, and he was not contradicted. There is no proof or pretense that any injury to appellee was caused by it.

From time to time thereafter appellant put in other rock to fill cavities made by ordinary freshets. That of 1875 washed out the corner of the lower wing of the west abutment, and in December of that year, or in January 1876, it put in a new and longer bridge—resting on trestles, which widened the opening—and some rock, but probably none except what was taken from the abutment. But the water did no damage by means or in consequence thereof to appellee until July 4, 1876, when an extraordinary flood swept it out and carried a portion thereof upon his land. For this damage, however, and notwithstanding the character of the

flood, appellant paid him the sum of $375 in full satisfaction. It then removed from his land, with his assistance, the rock which had been so thrown upon it, laying a portion thereof upon the bank to prevent the water from breaking over on it, and the residue, with other like material, in the bed of the creek at and about the bases of said abutments; between which, and for a distance of eighty feet above and below, through the filling in the stream caused by said washout, it cleaned out a channel, the capacity of which is differently stated by the witnesses, of twelve to thirty feet.

This was the work referred to in said first count as having been done about the year 1875, and constituted the cause of action therein alleged.

It is to be observed that it was not a work of obstruction, or even of construction, but of repair; not of change from an original condition, but substantially of restoration to it. The condition of the creek bed at and immediately about the bridge before this flood, so far as it was affected by any act of appellant, is not complained of. On the contrary, having been the same for about five years without injury to appellee, it is recognized by implication as lawful and proper. But it had been changed, by a cause for which no one was responsible, to one of apparent peril to the property of appellant and of important interests committed to its care.

This change consisted in the washing out of the protection to the bed of said creek and of a portion of the bed itself, on appellant's right of way; and its effect was to expose and threaten the structure upon which its track was then laid. To avert this peril, if practicable without invading the rights of others, was its plain duty.

The most natural and appropriate method of doing it would seem to have been to replace the material that had been so removed or its equivalent. Hence such replacing, although " in the bed of the river" and " in large quantities," would not necessarily be wrongful.

Appellee himself saw the propriety of placing a large quantity of rock and stone in said bed to guard against danger from the condition in which the flood had put and left it. His

complaint was directed wholly against the manner of placing it, and limited to a single particular, namely, the capacity of the channel then cleaned out. He testified that he told the superintendent, at the time, that his men had not made it wide and deep enough, but that the latter was of a different opinion—the one evidently having in view the possibility of another flood of like character, and the other not anticipating any such.

The extent of appellant's duty in respect to this work of restoration, repair and protection was the same as in the original construction of the bridge and embankment—to leave room for the passage of the water, without injury by reason of or in connection with it, in all ordinary floods.

Whether it fell short of the full performance of that duty, to the damage of appellee, was the issue of fact for the jury to determine, and the burden of proof was on him.

Upon a careful review of the evidence as preserved in the bill of exceptions we can not help remarking that on this question it is singularly obscure. There is an unusual lack of definiteness in relation to many of the facts and conditions upon which its satisfactory determination must depend.

It has been shown that all the operations of the company at this point previous to the flood of July 4, 1876, were free from fault. That flood was clearly, in the legal sense, an extraordinary one. If then it swept out the rock lawfully placed in the bed of the creek at the crossing, thereby obstructing the channel below and damaging appellee's land, it was his misfortune, for which appellant was not responsible, and from which it was not bound to relieve him. Such a flood is said to be a "visitation of Providence, and the destruction it brings with it must be borne by those to whom it happens to fall." McCoy v. Danley, 20 Pa. St. 85; Burwell v. Hobson, 12 Grattan, 322; Smith v. Agawam Canal Co. 2 Allen, 355; The P. Ft. W. & C. R. R. Co. v. Gilleland, 56 Pa. St. 445; Bellinger v. N. Y. Cent. R. R. Co. 23 N. Y. 42. But it did not carry out the new bridge resting on trestles, then recently made, nor any part of it. Unless, therefore, it in some way rendered that bridge appar-

ently dangerous for its intended use as part of the railroad track, or exposed it to some new danger, appellant was under no obligation to do anything about it.  From the fact, however, that it did replace the stone, clean out a channel through the filling and riprap the bank, it is safely inferred that something of the kind appeared to be necessary for its support or protection.  But in doing this its duty was only to leave room enough for the passage of the water, without injury to others, in ordinary floods, through the opening which its own act effected,—not through any obstruction below, caused by the extraordinary flood, however that might affect the land of appellee. .  The question recurs whether it failed in the full performance of this duty; and here, we say, the evidence is not clear.  No one needs to be told that rock or other material placed in the bed of a stream will obstruct the water as it flowed in the condition immediately preceding the obstruction, in proportion to the quantity of such material.  But in this case these are not the proper periods of time for comparison. The inquiry should be how much, if any, this refilling obstructed the flow, as compared with it, not as it was immediately before, but as before the flood which induced it.  Regarding the work as a whole, both the refilling and the cleaning out together, we find from the evidence no reason to suppose that so compared it was injurious at all, but rather helpful to appellee.  Just what was the condition of the creek bed and railroad structures when that flood came, and how much or in what manner it was thereby changed, as affecting the capacity of the channel and opening or the flow of the water, are not directly shown, nor are the data furnished from which to infer it.  We only know in general that it was a considerable washing out by the flood and refilling after it, but not whether more of the latter than was necessary to support or protect the road structures or was consistent with the safety, as affected by it, of appellee's land in ordinary freshets.  The person who had charge of it testified that the work was well done and left the stream in good running order; the company was more interested in so leaving it than was the appellee; no further damage was suffered until July 12, 1878; and the flood of that date, by which it was done, was most extraordinary.

We do not mean to say that if the work had been so negligently or improperly done that by reason of it an ordinary one would have caused that damage the plaintiff might not have recovered although it was in fact extraordinary. The case, we think, does not present that question. What an ordinary flood would have done is purely matter of conjecture, and there is no basis in the evidence for that hypothesis, which was therefore erroneously included in the instructions given for the plaintiff.

The foregoing observations apply with equal if not greater force to the work of 1876 at the Daly bridge, above, which is the subject of complaint in the second count. If that was not improperly done, and was washed out by the great flood of July 1878 and left heaped and piled in the stream below, but beyond the line of appellant's right of way, then appellant was not bound to remove it or make a channel through it; and the diversion by it of the waters of the stream in the freshet of September, whether extraordinary or only ordinary, is no cause of action.

We think the verdict, which was manifestly found under one or both of these counts, was not supported by the evidence, and that the instructions in the particular just above mentioned were erroneous. A new trial should therefore have been granted on appellant's motion. For these errors the judgment is reversed and the cause remanded.

Reversed and remanded.