GULF, COLORADO & SANTA FE RAILWAY COMPANY v. J. L. PRESTON.
No. 6289.

1. **Practice—Exceptions to Evidence.**—Exceptions to the legal sufficiency, whether of form or substance, of the pleadings should be made before the trial upon the issues of fact. Such defects can not be taken advantage of by objections to testimony upon the trial.

2. **Same.**—Where the allegations are good on general demurrer the failure specially to except is a waiver of any defect in the formal statement.

3. **Same.**—See allegations held sufficient to admit testimony to two overflows upon lands damaging the plaintiff, and caused by embankment made by the defendant, there being no special exceptions to the petition. See testimony sufficient to warrant findings of fact for the plaintiff.

APPEAL from Bosque. Tried below before Hon. J. M. Hall.

The opinion states the case.

*W. M. Flournoy*, for appellant, cited Mayer v. N. Y. & C. H. Ry., 88 N. Y., 351; Ellett v. St. L. K. C. & N. Ry., 76 Mo., 518; Rev. Stats., art. 4170; Railway v. Halloran, 53 Texas, 46, 54; H. & G. N. Ry. v. Parker, 50 Texas, 330, 342, 346; G. C. & S. F. Ry. v. Helsley, 62 Texas, 593; 20 Am. and Eng. Ry. Cases, 103–116.

*S. H. Lumpkin,* for appellee, cited G. C. & S. F. Ry. v. Helsley, 62 Texas, 593; Ft. Worth & D. Ry. v. Scott, 2 W. & W. Cond. Cases, sec. 140; G. C. & S. F. Ry. v. Donahoo, 59 Texas, 128; G. C. & S. F. Ry. v. Pool, 70 Texas, 713; Railway v. Parker, 50 Texas, 330.

As to opinion of non-expert, I. & G. N. Ry. v. Klaus, 64 Texas, 293.

HOBBY, JUDGE.—The appellee J. L. Preston brought this suit on the 8th day of March, 1886, against appellant to recover damages for the alleged negligent construction of an embankment, etc., over a slough crossing plaintiff's land, which caused his land and crops to be overflowed, injured, and destroyed. The petition alleged that on the 12th day of November, 1880, appellant procured the right of way across his land; that in consideration therefor it was to construct and maintain the necessary culverts, sluices, and openings for water as the natural lay of the land required, etc., for its drainage; that on the —— day of May, 1884, the waters of the Bosque River, the surface waters, and the waters of the branches in the vicinity of said land filled said slough and overflowed said land; that on and prior to —— day of May, 1884, appellant constructed and maintained and still maintains a large and long embankment of earth across his land from north line to south line, dividing it into two parts, leaving forty acres on east of its road bed and balance on west of same, and crossing at an acute angle from the north a wide branch or slough on the upper or northern portion of his land, as shown by said exhibit; that there was a large branch or slough which ran through his land from the north to the south about 75 yards wide, which was the natural channel and drainage of his land; that the railroad crossed it at an angle in the upper part of his farm, making it from east to west bank in the manner in which it crossed about 100 yards; that appellant constructed its embankment of earth for its road bed to within a few feet of the center of the slough, and constructed a bridge for its road bed across the center of the slough about 40 feet long and about 3 feet high, supported by piling and posts from the embankment of earth on the north to the embankment of earth on the south; that the bridge was unskillfully and negligently constructed and maintained without having first prepared and constructed the necessary passage for the waters of said branch or slough as the law required, and in order that said waters would flow in its natural and usual channel before the building of said bridge, in that on the —— day of May, 1884, and on the 28th day of May, 1885, the waters of said slough striking the bridge from the north, and the space under the bridge being too small to permit the passage of the waters, said waters backed up against the bridge over the slough on his land, and there not being sufficient space for the flow of the water as before the construction of the bridge and road bed, the waters overflowed the banks of the slough north of the bridge and over the high land of appel-

lee, in his field east of the slough and road bed, and on the ——— day of May, 1884, washed up and totally destroyed six acres of corn and fifteen acres of cotton then growing upon his land adjacent to and east of said railroad, and washed up and carried off the soil of twenty-one acres of said land, to his damage of $2000. That the corn was reasonably worth at the time $30 per acre, making $450, and that the twenty-one acres of land was worth $75 per acre. That on the 28th day of May, 1885, he had growing on said twenty-one acres of land wheat, which was destroyed by reason of the overflow of that date, and was reasonably worth $500. He alleged that the overflowed land by reason of the overflow had become worthless and of no value, to his further damage $1500. He prayed for judgment for $3000 and costs.

There was a general demurrer and denial, and a special answer alleging a proper construction of the embankment, and that the rainfalls causing said overflow were of such unprecedented a character that no human foresight could provide against.

Plaintiff recovered judgment for the sum of $450. This appeal is prosecuted therefrom upon the following assignments:

The first three assignments of error relate to the admission of alleged improper evidence. The plaintiff having testified to circumstances and facts attending the overflow in 1884 of the land, was asked, "If the same land had been overflowed at any other time, and if so, when?" This was objected to by the defendant because the allegations were not sufficient or broad enough to admit proof as to a second overflow. The witness was permitted to testify about the overflow of 1885. The petition plainly avers that "on May 28, 1885, the waters of said slough striking the bridge from the north, and the space under the bridge being too small to permit the passage of the waters, said waters backed up over the slough on said land, and there not being sufficient space for the flow of the water as before the construction of the bridge and road bed, overflowed the banks of the slough north of the bridge and over the high land of appellee," etc.

This is followed by an averment in another part of the petition, "That on the 28th day of May, 1885, he had growing on said 21 acres of land wheat, which was destroyed by reason of the overflow of that date," giving the value, etc.

These allegations were certainly sufficient to admit evidence in support of them upon a general demurrer. If they were defective for want of particularity the defendant should have specially excepted on that ground or upon whatever grounds they may have been regarded as insufficient. As a general rule exceptions touching the legal sufficiency, whether of form or substance, of the pleadings should be made before a trial upon the issues of fact.    Williams v. Bailes, 9 Texas, 63; Gaines v. Salmon,

16 Texas, 312.   In such a case the plaintiff would have the opportunity to amend and perfect the plea if the exceptions were sustained.

But the failure to specially except when the allegation is good on general demurrer is a waiver of any defect in the formal statement.   To sanction the practice contended for by appellants would result practically in permitting a party to except to a pleading for the first time by objecting to the introduction of evidence because the pleading is defective, which should have been raised by exception to the pleading at a time when if sustained it could have been cured by amendment.   It would operate as an injustice to sustain such objection when too late for the plaintiff to obviate it by amendment, when if the exception had been filed at the proper time it might have been so obviated.

The next assignment is that the court erred in permitting the witness W. H. Maples to testify to the height above the earth of the enbankment on which the railroad was built on his land north of the slough and of plaintiff's land.   This assignment is not supported by the record.   The judge endorsed upon the bill his refusal to approve the same " because the court sustained the objection to the evidence, and did [the word not is evidently omitted] regard the same in its decision of the case."   There is nothing in the statement of facts showing that this witness testified to this fact, and we are not prepared to say that it would have been a reversible error, if error at all, had he so testified.

The remaining assignments necessary to be considered relate to the conclusions of fact found by the court, and are, substantially, that they are not warranted by the allegations and the proof in this, that "there is no claim for damages for overflow of the Bosque River or for the obstruction of the waters of said stream, but for the alleged obstruction to the free passage of the waters of the slough across appellee's land, caused by the alleged unskillful construction of the bridge across the same, and building an embankment into the slough without sufficient openings for said waters to pass, and thus causing the overflow."

The allegation was that the waters of the "Bosque River, the surface waters, etc., in May, 1884, filled said slough and overflowed said land," etc.   After describing the slough and the manner in which the embankment and bridge were built and the road crossed it, the petition alleges the negligence and want of skill in the construction of the bridge and embankment, and the want of necessary sluices and culverts, as required by law, for the proper drainage of the land, and sets forth "that on May 28, 1885, the waters of said slough striking said bridge from the north, and the space under said bridge being too small to admit the waters of said slough and allow it to flow in its natural channel, said waters backed up against said bridge and the ends of the embankment, and the waters of said slough overflowed plaintiff's land," etc.; and "on —— day of May, 1884, washed up and totally destroyed his land."

The obvious meaning of this language and the necessary inference from the statements contained in the petition is that waters from the Bosque River, the surface waters, and the waters of the branches in the vicinity of plaintiff's land filled the slough crossed by the railroad, and through and over which the embankment and bridge were alleged to have been negligently constructed; and that the waters not having sufficient outlet through the embankment built into the slough, and not having sufficient space for a passage through the piling, overflowed the land and caused the damage complained of.

These were the material findings of fact by the court fixing the liability of the defendant.

The evidence is that the slough in 1884 was about 75 or 80 yards wide. It ran in a southerly direction across appellee's field, originating some miles above, and ran out of the Bosque River. A few miles south of appellee's land it again enters that river. The widest and deepest part of the channel is in appellee's farm. The waters of the Bosque and other waters in the vicinity are carried off through this slough. The road enters appellee's land about where the slough does, crossing it diagonally at a point where it is about 100 yards in width. A dump runs into the slough from the north to within 50 or 60 feet of the center. In the center the road is constructed on a bridge upon piling, which "sets angling to the way the water runs." This bridge is 100 or 120 feet, and the road then continues on a dump which on the south side of the slough is at least 100 feet. The trestle or piling is in the deepest part of the channel. The height of the dumps on each side is about six feet.

In May, 1884, there was an overflow of appellee's land caused by the construction of the abutments raised. The earth thrown into the slough threw the water across the field out of its natural course.

In May, 1885, the Bosque River overflowed its banks into the slough. It came down, struck the embankment, and gathered drift and obstructions there, and dammed the water so high that it ran over the high ridge east of the railroad and ran down on plaintiff's land.

There was testimony that the land had been overflowed before the road was constructed, but it did not cause the damage resulting from the overflow of 1884–85. There was evidence that some difference of opinion existed as to whether two overflows about the year 1872 were greater than those of 1884 and 1885.

The effects of the overflow were to destroy, in 1884, about 15 acres of corn valued at $14 per acre, 10 acres of cotton valued at $10 per acre. The soil was washed from and destroyed about 15 acres of freshly plowed land worth $10 per acre. The damage to plaintiff's wheat caused by the overflow of 1885 was shown to be about $180.

Upon the foregoing facts the court found among other things:

"That said slough is the natural outlet for the waters of the Bosque

River when the same overflows the west bank of the river and enters the north end of said slough, by which said waters are carried back into the said river several miles south of plaintiff's land.

"That in very heavy rainfalls the waters of the Bosque River overflowed its west bank above and north of plaintiff's land, and the same passed into the slough, entirely filling the same, but were by said slough conducted off the land of plaintiff so as to prevent washing or injuring the land before the defendant built its road across said slough.

"That the defendant by filling up in part the slough where its road crosses the same obstructed and prevented the free egress of the waters from the Bosque River when its waters overflowed its banks as above stated, and thereby turned said waters in 1884 and 1885 in part out of the slough and caused the same to flow over and across plaintiff's land lying east of its road.

"That the waters of the Bosque River overflowed its west bank north of plaintiff's land in May, 1884, and destroyed five acres of plaintiff's corn of the value of ten dollars per acre, also ten acres of cotton of the value of ten dollars per acre, and also badly washed the soil from fifteen acres of plaintiff's land, damaging the same to the amount of ten dollars per acre, aggregating the sum of two hundred and sixty dollars; and that plaintiff's land was overflowed in May, 1885, and fifteen acres of wheat of plaintiff destroyed of the value of ten dollars per acre, aggregating the sum of one hundred and fifty dollars.

"That these damages were caused by the negligent manner in which defendant had built its road across the slough on plaintiff's land, by obstructing and preventing the flow of the said waters through said slough.

"That the waters of the Bosque River were out of the banks and overflowed plaintiff's land in 1884 and 1885, and in 1871, 1872, and 1873, but did no injury to the land until after the building of defendant's road across plaintiff's land as found above.

"That the bridge did not interfere with the flow of any water except that which flowed out of and over the west bank of the Bosque River, and the embankments in the slough obstructed these waters and caused the damage to plaintiff.

"That from the negligent manner in which the defendant constructed its road over and across plaintiff's land the plaintiff has been damaged in the sum of $450, and in law should recover of and from the defendant that sum."

As these are the conclusions principally assailed by the assignments of error, and as they embody the same questions involved in other conclusions also made the basis of other assignments, it dispenses with the consideration of the latter.

We are of opinion that there was no error in the rulings upon the admission of the evidence first referred to, and that the evidence supports

the material conclusions of fact and law, and that the judgment should be affirmed.

A recovery was had for damages caused by the same overflow, and upon substantially the same facts as in this case, in the case of Gulf, Colorado & Santa Fe Railway Company v. Pool, 70 Texas, 713.

*Affirmed.*

Adopted May 29, 1889.