KANSAS CITY, PITTSBURG & GULF RAILROAD CO., VS. WILLIAMS.

Opinion delivered October 6, 1900.

1.    *Damages—Overflow of Water—Caused by Railroad—Effects of Prior Release.*

When a landowner has, prior to the injury complained, executed a release of the railroad company for all damages occasioned by the building of a railroad across his land, he can only recover for damages thereafter caused by an overflow of water when it is shown that the company was negligent in the construction of its railroad through the premises in question; all other damages having been released by his written agreement.

2. *Overflow of Water—Care Due from Railroad Company to Prevent—Act of God.*

> In an action against a railroad company for damages to crops caused by an overflow of water claimed to have been caused by the failure of the company to construct proper ditches and culverts to carry away the surface water, the company will not be held liable for damages resulting from an extraordinary and severe storm which destroyed crops on higher and better grounds, and would probably have produced the injury if the company had constructed the ditch and culvert plaintiff claims it should have constructed; for the company is required to take such precautions as will prevent damage, from this cause, under ordinary and usual circumstances; and the damage complained of evidently occurred by the act of God, and not by defendant's negligence, and the defendant was entitled to a peremptory instruction for a verdict in its behalf.

3. *Surface Water—Proper Disposition of, the Duty of Railroad Company—Excused by Plaintiffs Acts.*

> When a railroad company in building its road across plaintiff's land, collected the surface water by ditches and threw it across its right of way, on plaintiff's premises, by a culvert in a spot where it had not theretofore ran, it was defendant's duty to dig a ditch to convey it off the lands with a minimum of damage thereto; but when it offered to do so and was prevented by plaintiff himself, the failure to convey the water off his land is the result of his own fault and not the negligence of defendant.

Appeal from the United States Court for the Northern district.

WILLIAM M. SPRINGER, Judge.

Action by J. L. W. Williams against the Kansas City, Pittsburg & Gulf Railroad Company to recover damages resulting from overflow of water. Judgment in favor of the plaintiff. Defendant appeals. Reversed.

(24)

This is an action brought by the plaintiff, appellee here, to recover from the railway company damages claimed to have been sustained by him by reason of the overflow of water on his farm, caused, as is alleged, by the improper and negligent construction of the railroad, whereby a large amount of surface water, flowing from the lands adjacent to and on the upper side of the railway is carried along the roadbed, and through a culvert, onto the lands of plaintiff, as well as by the overflow by backwater from an insufficient outlet. The defendant company obtained from congress, by act approved February 27, 1893, the right to build its railroad. It let the contract of construction to the Arkansas Construction Company, which, in the month of April, 1895, entered upon the farm of plaintiff and began the work of construction through it. The road through the farm is about three-fourths of a mile in length. While that part of the railroad crossing the farm was being built, and before completion, to wit, on the 14th., of May, 1895, the plaintiff executed to defendant railway company the following "release" as it is termed: "Received of the Kansas City, Pittsburg & Gulf Railroad Company, four hundred and fifty dollars, in full compensation of all damages accruing from the building of said railroad across my land situated in Going Snake district, Cherokee Nation, and hereby release said R. R. Co. from any further claims on account of damages arising from the building of said railroad; and I further agree to sign a release for damages arising from the building of said railroad. I further agree to sign a release for damages to be filed with sec. of interior whenever presented by the agent of said R. R. Co. J. L. W. Williams." The evidence tended to prove that at the time of the execution of this instrument the dump or roadbed had been about completed, but the culvert about which complaint is made had not been erected and a certain ditch which had been dug by plaintiff before the building of the railroad for the purpose of pro-

tecting his farm from overflow from surface water ruuning down from the surrounding hill land, had not yet been filled; that the closing of this ditch by the railway company diverted the water to the culvert, causing it to flow in large quantities onto the plaintiff's farm at a different place than before, thereby producing the overflow and damages to the farm complained of; that, by reason of the diversion of the water through the culvert, it was caused to flow over the cultivated land on the east side of the roadbed, where it had not flown before. Verdict and judgment for plaintiff for $1,500.

*J. McD. Trimble, J. A. Eaton* and *J. H. Koogler,* for appellant.

*W. T. Hutchings,* for appellee.

CLAYTON, C. J. The contract of release of damages Release of damages. executed by plaintiff to defendant had the effect only to release the company from all damages resulting from a proper construction of the railroad and therefore, before the plaintiff can recover any damages, it must be shown that the company was negligent in the construction of its railroad through the premises in question. It is not sufficient for the plaintiff to show that he has been damaged, but he must establish by a preponderance of the testimony that there was negligence in the construction of the road through his premises, affecting the drainage and flow of water. In other words, he must show that this railroad in this respect was not built in accordance with the ordinary and reasonable rules of engineering skill, and that the damages claimed was the result of this defective construction. All other damages had been released by him by his written agreement.

The first act of negligence alleged is that the company failed to use proper care in providing for the flow of

surface water, in this; That in erecting its roadbed it filled
a certain ditch which plaintiff had theretofore dug, extend-
ing in a southwesterly direction for a considerable distance
around the farm, receiving the water from the highlands
above, and conveying it around through the right of way
of the company to a place where it found its way to a natur-
al stream, thereby causing the water to accumulate and back
up on the farm, destroying a crop of oats then growing,
and doing other damages to the land. It is contended that
a culvert should have been erected at this place. The testi-
mony shows, however, that the company dug a ditch from
this point, running north along its dump, to a culvert it had
erected near the north end of the farm, at the lowest place
on the line of the road. This ditch was connected with the
old one, so that the water flowing through the old ditch
was simply diverted and carried along the roadbed to the
culvert, through which it found its exit. The declivity of
the new ditch from its intersection with the old one to the
culvert was found to be $4\frac{7}{10}$ feet. It was about 900 yards
long, and was amply sufficient to take care of the water
from this part of the premises, under all ordinary circum-
stances. During the progress of the work, and between the
time that the old ditch was filled by the dump and the dig-
ging of the new one, there occurred an unusually heavy
rainfall. All of the witnesses concur, and the plaintiff ad-
mits, that this storm, for the season of the year, was un-
precedentedly severe. Most of the oat crops in that vicin-
ity were destroyed by it, and the wheat crop which was
then in shock was badly damaged. After the storm the
new ditch was dug, which relieved the situation as far as
that part of the farm was concerned. No special damage
.to the land was shown there, nor is it shown that the dam-
age to the growing oats would not have occurred had the
new ditch been dug prior to the storm. Indeed, as other
oat crops were shown in that vicinity, on higher and better

protected ground, to have been entirely destroyed by the same storm, it is reasonable to suppose that this would have also been destroyed by it had the ditch not been filled by the dump. The rule of law in such cases is that the defendant is only required to take precautions against ordinary storms which occur in the vicinity; and if the damage would have occurred by the act of God, notwithstanding the obstruction, even if there were negligence on the part of the defendant, damages cannot be recovered. In the case of Baltimore & O. R. Co. vs Sulphur Spring Independent School Dist., 96 Pa. St. 65, the court say: "If the act of God in this particular case was of such an overwhelming and destructive character as by its own force, and independently of the particular negligence, alleged or shown, produced the injury, there would be no liability, although there were some negligence in the maintenance of the particular structure." In the case of Coleman vs · Railroad Co., 36 Mo. App. 476, the rule is laid down as follows: "Defendant is only required to take precautions against ordinary storms. If, therefore, defendant had exercised ordinary prudence and care in replacing its bridge, considering the character and nature of the stream, the lay of the territory which it drained, and of the ordinary storms which occur in that vicinity, it has not been guilty of that character of negligence which is held to bring about a liability by commingling with the act of God. 'Beyond this prudent circumspection cannot be expected to look, and there is therefore no liability for extraordinary floods,—those unexpected visitations whose coming are not foreshadowed by the usual course of nature, and must be laid to the account of Providence, whose dealings, though they may afflict, wrong no one.' In this case, unlike most cases in which the act of God is invoked as a defense, the act of negligence did not occur during the storm, or after it was over. Therefore the act is only made a negligent act by comparison with the

*[margin note: Negligence. Measure of.]*

duty which defendant owed before the storm. It was not defendant's duty to foresee and prepare against an unprecedented storm; in other words, it was not defendant's duty to prepare against 'the act of God.' Its duty was only to prepare against ordinary storms." See, also, Railway Co. vs Bridges, 86 Ala. 448, 5 South. 864; Ellet vs Railway Co., 76 Mo. 518, 534; Fick vs Railroad Co., 157 Pa. St. 622, 27 Atl. 783; Railroad Co. vs Bethel, 11 Ill. App. 17; Libby vs Railroad Co., 85 Me. 34. 26 Atl. 943; Railroad Co. vs Halloren, 53 Tex. 46; Railway Co. vs Pool, 70 Tex. 713, 8 S. W. 535.

The court's general charge was silent on this subject, but the defendants third and fourth requested instructions asked that the jury be charged substantially as we hold the law to be, but they were refused, and no other instruction was given in lieu of them. If this branch of the case was to have been submitted to the jury at all, the requested instructions most certainly should have been given. But in our opinion the proof was so overwhelmingly strong that the damage was caused by an act of God that this branch of the case should not have been submitted to the jury at all, but they should have been instructed to find this issue for the defendant.

Damages.
Overflow of
water.

The other element of damage contended for by the plaintiff is that the company, by its roadbed and its system of ditching, collected a large amount of surface water, which was concentrated at the culvert, and discharged through it onto plaintiff's land below, where it had never before flowed, resulting in overflowing his land, cutting deep ditches through it, and destroying a crop of wheat. As before stated, the road ran through plaintiff's premises for about three-fourths of a mile. The culvert was located at its lowest point, and, as far as the company's interest was concerned, the road, with its culverts, was properly and

scientifically constructed. The contention is not that the culvert was located at an improper place, but that another one should have been built at the place where the old ditch had crossed the right of way; thus permitting the water collected by the old ditch to be carried off at that point, instead of being diverted by conveying it along the roadbed by the new ditch to the culvert, where it would necessarily meet the waters flowing from other directions, increasing the volume, and throwing it through the culvert in a flood upon the land below, where it had not flowed before.

It was in proof by scientific engineers, and it is self-evident that the proper point on a line of railway to construct a culvert to carry off surface water flowing from adjacent country is at its lowest point on the line in that vicinity; otherwise, water must be made to flow up hill, or an undrained accumulation must necessarily follow. In this case it is established by the proof, and agreed to by all, that the culvert was so located. That the company was required to erect and maintain another one higher up cannot, we think, be successfully contended. A multiplicity of openings in a roadbed, such as culverts and bridges, not only greatly enhance the cost of construction and maintenance, but also increase the danger of accidents in the operation of the road; and these are continuous. Good engineering skill requires, therefore, not only for the benefit of the company, but also that of the public, that these openings should be reduced to a minimun. If it would have been better, as far as the interest of the plaintiff is concerned, to have erected another culvert 900 yards to the south, it also would probably have lessened the flow of water at this particular place to have built one to the north, and others at intermediate distances, or, still better, to have built the whole line over this farm on trestlework, so that the water would have been entirely unimpeded in its flow. How is this to be determined? What is the test?

*Surface water Duty of R. R. company.*

It is, taking all things into consideration, was the road built and the culverts located and constructed, in accordance with good engineering skill? When the plaintiff entered into the contract with the company, which was, in fact, a conveyance of the right of way, with a relinquishment of all damages arising from a proper construction of the road, he knew, or is held to have known, that a proper construction of the road would require a culvert at the place where it was constructed; and if sufficient to carry off, under all ordinary circumstances, the surface water contributory to it, and proper care has been taken to conduct the water away from the lower opening so as to do as little damage to plaintiff's land as possible, all other damages were provided for by the contract and paid for by the company.

It is conceded to be the law that, however great may be the rights of a landowner to divert and control surface waters, he must not gather them into a flood, and cast them upon his neighbor's land, but this very right may be contracted for, and the damages arising from this very condition may be paid for in advance. A sale of the right of way, with a knowledge of the purpose for which it was to be used, under the facts of this case, would have this effect; and, for stronger reasons, the contract, releasing, for a valuable consideration, all damages, had the same effect. From a full consideration of the facts of this case, giving to the contract between the parties a fair interpretation, we hold that the company was not required to erect the second culvert, and, as it is conceded that the one built was at a proper place and was properly constructed, the plaintiff was not entitled to damages because of this. He had been paid for it under the contract, and the jury should have been so instructed.

But, inasmuch as the company had collected the water and thrown it across its right of way on this part of plain-

tiff's premises, it was its unquestioned duty to have provided a way for its exit, so as to do as little damage to plaintiff's land as ordinary care and prudence could prevent. The lower opening of the culvert was about 100 yards from the bed of a creek to which the water could have been conveyed, after which it would have flowed off in safety. The evidence showed that a ditch could have been dug through the field to this place at reasonable expense; and, notwithstanding the fact that the company would have been compelled to have entered on plaintiff's land in order to dig the ditch, we hold that it was its duty to have done so, provided it was not prevented from so doing by the plaintiff, or that the plaintiff himself could not have done so at slight expense. Simpson vs City of Keokuk, 34 Iowa, 568; Factory vs Hatchelder, 3 N. H. 190; Ang. Water Courses (7th Ed.) 166a; Dunklee vs Railroad Co., 24 N. H. 489; Seibert vs Levan, 8 Pa. St. 383.

But in this case it is testified to by the defendant's chief engineer, and admitted by plaintiff in his testimony, that the defendant offered to dig this ditch, but that plaintiff would not permit it to do so. The engineer testified that when he offered to dig the ditch, and plaintiff objected, he offered to make for him a covered one, so as to reduce his damages to the minimum, but the plaintiff still objected, and this is not denied. From this proof it is clear that all damages resulting from a failure to dig the ditch were caused by the fault of the plaintiff, and not by the negligence of the defendant, and therefore he cannot recover on this ground.

The defendant, in its sixth instruction, requested the court to instruct the jury that, if they found the above facts to be true, their verdict, on this ground, should be for the defendant; but the court refused to so instruct, and gave no other instruction covering this point. The instruction should have been given. Indeed, upon the whole case, we are of

the opinion that the peremptory instruction asked for by defendant, that the jury should find its verdict for the defendant, should have been given.

There were a number of other questions raised by the assignment of errors, but, from our view of the case, we do not deem it necessary now to pass upon them. For the errors above set forth, let the judgment of the lower court be reversed, and the cause remanded.

THOMAS, TOWNSEND, and GILL, JJ., concur.