No. 6288.

THE GULF, COLORADO & SANTA FE RAILWAY COMPANY *v.*
J. B. POOL.

1. PLEADING.—Though a petition may contain a more detailed statement of the facts on which a recovery is sought than may be required to present properly the cause of action, yet, when the purpose is to indi-cate thereby particularly the scope of the evidence which will be relied on at the trial, and no injury can result to the adversary from their statement, it is not bad on demurrer.

2. EXAMINATION OF WITNESS.—When a witness has on cross examination more than once answered a question propounded by counsel, whether he shall again be required to make answer to the same question, is a matter within the discretion of the trial judge. The great object of the examination being to elicit the truth, the bearing, moral courage, bias, memory and demeanor of the witness being apparent to the trial judge, will furnish guides for his discretion, in determining the extent of the cross examination, and that discretion will not be revised when no injury could have resulted from its exercise. It is also within the discretion of the judge to permit a plaintiff who has been examined as a witness to be recalled to correct his testimony, previously given.

3. DAMAGES.—A railway company in constructing bridges, culverts and embankments, must provide against such damages as might be reason-ably anticipated from overflow of the stream, but the company will not be guilty of that culpable negligence that would make it respon-sible in damages if it failed to provide against such extraordinary floods as could not have been reasonably foreseen by men possessing ordinary engineering skill and capacity required in the construction of railroads.

4. MEASURE OF DAMAGES.—The measure of damages against a railway company for the destruction of growing crops and land injured or destroyed by overflow caused by the defective construction of a rail-road track, is the market value of the destroyed crop at the time it was destroyed, and the injury to the land caused by the overflow. The rule for computing damages given in Railroad Company v. Helsley, 62 Texas, 596; Railroad Company v. Tait, 63 Texas, 223, and Railroad Company v. Johnson, 65 Texas, 393, adhered to.

APPEAL from Bosque. Tried below before the Hon. J. M. Hall.

The opinion states the case.

*W. M. Flournoy,* for appellant: The damages claimed being alleged to have been caused from the overflow of Neil's creek

because of the insufficient opening over said creek left by defendant in constructing its road, and charges one, four and six being to the effect that, if the said opening was sufficient to carry off the waters of said creek in ordinary rainfall, defendant was not liable,·contained the law applicable to the case, and these or something equivalent thereto should have been given to the jury. The charges referred to which were refused were as follows:

1. If you believe from the evidence that the defendant, in building its road across Neil's creek and the land of plaintiff, left sufficient ·opening at said creek to carry off water that ˙ would accumulate in the channel of said creek during an ordinary rainfall, and you believe from the evidence that there was no obstruction to the passage of said water down the channel of said Neil's creek, you will find for defendant.

4. Defendant is not liable, unless the opening over and to Neil's creek left by defendant in building its road and bridge across said stream was inadequate and insufficient to carry off the water accumulating in said creek by an ordinary rainfall or an ordinary rise.

6. If you believe from the evidence that the flood of May 28, 1885, from the effects of which plaintiff claims damages, was an ordinary one, caused by an ordinary rainfall, and you believe that the opening left by the defendant over Neil's creek was sufficient to carry off the water accumulating in the channel of said creek, and that it had a full and unobstructed passage through said opening, you will find for defendant, even though you· may believe that said creek overflowed its banks and flooded plaintiff's farm, by which he suffered damages. (Rev. Stats., art. 4170; Railroad v. Halloren, 53 Texas, 46, 54; Railroad v. Parker, 50 Texas, 330, 342, 346; Railroad v. Helsley, 62 Texas, 593; Ellett v. Railroad, 76 Mo., 518.)

The court failed in its charge to lay down any correct and specific rule to guide the jury in estimating damages to the land claimed to have been damaged. The charge of the court on the point complained of was as follows: "If, under the evidence and the charge of the court, you·shall find the plaintiff has been damaged by any injury done his land, then you will find for him such damages as you may, under the evidence, believe has been done to the particular land, if any, that. has ˙been injured," etc. (Railroad v. Helsley, 62 Texas, 593.)

The verdict of the jury is contrary to the evidence in this:

The evidence shows that the embankment of defendant's road, where the water overflowed said embankment, was only one and one-half feet high and the water was about five feet deep; showing that said embankment did not bank or obstruct the flow of said accumulated water. (Chandler v. Meckling, 22 Texas, 41; Gibson v. Hill, 23 Texas, 83; Randall v. Collins, 58 Texas, 234; Railroad v. Casey, 52 Texas, 122.)

No brief for appellee on file.

WALKER, ASSOCIATE JUSTICE. Appellant was sued by appellee for damages for injury to his land and crops of cotton and oats adjoining the track of the railway of appellant caused by alleged negligence in its construction of a bridge, and an embankment north of the bridge, whereby the waters of Neil's creek, when swollen by rain, were thrown over the adjoining fields, washing away the soil and destroying the growing crops thereon. The petition described the situation of the land, the dimensions of the embankment, the want of culverts and sluices and the width of space left at the bridge in its construction; and alleged defects, giving also a history of the effect floods had upon the land before the obstruction. The extent of injury to the land is set out, and the acreage and value per acre of the crops alleged to have been destroyed.

The demurrer and exceptions were overruled. The special exceptions applied to the details given, which might have been omitted, but their presence as indicating the scope of the testimony to be introduced could have been of no injury to the defendant. There was no material error then in overruling the exceptions. Complaint is urged against the action of the court in interrupting counsel for defendant in cross examination of the witness Preston. The explanation given by the judge in the bill of exceptions must be taken as true "that the court did say that the witness had already answered the question several times, and he thought that was often enough; he thought the witness had been cross examined fully enough on that point. But the defendant had full liberty and did continue the examination as to other matters. Counsel was stopped because he was persisting in interrogating the witness upon a matter about which he had answered fully several times."

In the examination of witnesses the subject lies chiefly in the discretion of the judge before whom the cause is tried. The

great object is to elicit the truth from the witness, but "the character, moral courage, bias, memory, and other circumstances of witnesses are so various as to require amost equal variety in the manner of interrogation, and the degree of its intensity to obtain that end." (1 Greenl. Ev., sec. 431.) It does not appear that any injury resulted, or could have resulted from the action of the judge in the exercise of his duty in directing the examination, and his action will not be revised.

It was also within the discretion of the court to permit the plaintiff to be recalled to correct his evidence before given.

By the testimony plaintiff's case was, that the railroad track ran north through plaintiff's field, near the Bosque river, on the east, and crossing Neil's creek on plaintiff's land. The creek at the bridge ran at the foot of a hill on the south; the field rising gradually to the north and west. The bridge spanned the creek from one hill on the south to an embankment thrown up to support the track to the north. The embankment is variously estimated at seven and a half feet to fifteen feet in height. The track from the bridge descended for a distance of from five hundred to seven hundred yards, then ran on a level for about two hundred and fifty yards then began an upward grade. The embankment at the break was only eighteen inches or two feet high. The water broke over the track about five hundred yards from the bridge and for about two hundred and fifty yards the embankment and track were washed away, the water running with much force along the west side of the embankment north (or up hill, as stated by one witness) and making a passage east and across the track, destroying totally about forty acres of cotton on the west, and fourteen acres of oats on the east of the track. On the west much soil was washed off, all the loose soil, taking the cotton by the roots, leaving the surface in holes.

The testimony was conflicting as to the dimensions of the opening at the bridge left for the passage of the waters of the creek. It was in evidence that the creek had been as high before in 1884, 1873, 1872 and 1870. The flood in 1884 was harmless from the fact that the back waters from the Bosque prevented any current. There were no culverts in the embankment.

The court charged the jury "that it was the duty of the company to leave sufficient opening [at the bridge] for the water caused by ordinary rain falls flowing along said creek and fol-

lowing the usual course to escape so as to prevent the same from causing any injury to the plaintiff's land and crops. But defendant was only bound to provide against such damages as could have been reasonably anticipated, and would not be guilty of such culpable negligence as to make it responsible in damages if it failed to provide against such extraordinary floods as would [not] have been reasonably foreseen by men of ordinary engineering skill and sagacity required in the construction of such railroads in general. By the expression extraordinary floods as used herein is meant such floods as are of such unusual occurrence as could not have been foreseen by men of ordinary experience and ordinary prudence. Ordinary floods are those the occurrence of which may be reasonably anticipated from the general experience of men residing in the region where such floods happen." The liability of want of such care and skill was given.

The measure of damages given in the charge was the market value of the cotton and oat crops at the the time, if any, they were destroyed, and the injury to the land as shown by testimony. The jury were also charged that if they found from the testimony that the bridge and the embankment were properly constructed, having sufficient opening for the escape of the waters from ordinary rainfall, and sufficient culverts and sluices in said embankment for the escape of the water from such rainfalls  *  *  or if the injury was caused by an extraordinary rainfall, to find for defendant.

The verdict was for six hundred dollars damages to the land and four hundred and seventy dollars for the destruction of the cotton and oat crops.

The court in its general charge gave the law applicable to the case as made by the testimony. There was no error in rejecting the additional charges as to the duty and the degree of care and skill required of the defendant and the conditions of its liability for damages. The rule for computing damages is not subject to criticism. (Railroad v. Helsley, 62 Texas, 596; Railroad v. Tait, 63 Texas, 223; Railroad v. Johnson, 65 Texas, 393.)

The conflict in the testimony as to the sufficiency of the opening left at the crossing of the creek; whether the bridge and embankment were properly constructed; as to whether this was an extraordinary rainfall; as to the water actually breaking through the embankment and the flood of water to-

ward and through the break; the destruction and value of the crops, and the extent of the injury to the surface of the land, were all subjects to be passed upon by the jury. The absence of sluices and culverts alleged in the pleadings and noticed in the charge of the court, could not have injured defendant. A failure to establish his case in part will not affect its rights upon what plaintiff *was* able to and did establish. The main facts were few and seemingly well supported by testimony. The embankment did raise the water, the water broke through the embankment, a current flowed northward toward the break, taking the cotton and surface soil in its course, and covering the oat field on the east of the embankment with mud. The creek had been as high before, and inquiry would have shown it, and ordinary care would have demanded upon information that such floods should have been guarded against.

We find no error. The judgment is affirmed.

*Affirmed.*