GEORGIA RAILROAD & BKG. CO. *v.* BOHLER.

GEORGIA RAILROAD & BKG. CO. *v.* HILL.

1. The evidence warranted the charge embodying the law contained in section 3018 of the code; no objection to the evidence alleged to have been illegally admitted was stated; and therefore the special grounds of the motion for a new trial are without merit.

2. A railroad company, in the construction and maintenance of its culverts and embankments, is not bound to guard against every possible contingency which may result in injury to the property of others, but it is bound to so construct, keep and maintain its culverts and embankments as that the accumulation of water from freshets which in the usual course of events are likely to occur, will not cause breaks in such embankments and consequent inundation of lands below. In guarding against such injuries, it is incumbent upon the company to take into consideration the climate, the clearings upon the stream, and all of those varying conditions peculiar to the locality and which might tend to increase the flow of the stream which the culvert was designed to accommodate.

3. The question as to whether the rainstorm which produced the injury in these cases was such an extraordinary flood as to relieve the railroad company was properly submitted to the jury, and the evidence upon this point, though conflicting, being sufficient to authorize a finding in favor of the plaintiffs, there was no error in denying a new trial.

March 16, 1896. Argued at the last term,

Actions for damages. Before Judge Callaway. Columbia superior court. March term, 1895.

These two cases were tried together by agreement. In the Hill case the damages claimed were larger than in the Bohler case, and the verdict was for $247.50. For the other material facts see the opinion.

*Joseph B. & Bryan Cumming*, for plaintiff in error.
*John T. West*, contra.

Atkinson, Justice.

F. N. E. Bohler sued the railroad company, alleging: She owns a tract of land of 130 acres, located on the north side of defendant's track in Columbia county, and running to within 350 yards of the track. There are ten acres of bottom land on the tract, lying on each side of a branch which runs through the farm and crosses the road-bed of defendant at or near what is known as the Fisk property. During the year 1893 petitioner had this bottom land planted in corn and peas, and up to September 13, 1893, had a fine crop of corn on the land. A high embankment had been erected

by defendant where its road-bed crosses the branch, and the water of the branch passes under the rails and embankment of defendant through the culvert made by defendant for that purpose. This culvert, used by defendant for the passage of water of the stream prior to September 13, 1893, was not large enough to carry off the water of the stream after a heavy rainfall, so that in such case the water would pond up on the upper side of the embankment in large quantities after every heavy rain, often so as to rise far up along the side of the embankment, thus exposing it to the danger of washing away. Defendant was guilty of negligence in not providing a sufficient culvert, and knew, or ought to have known, that its culvert was not sufficient, and its attention had been called to the fact. On September 13, 1893, there was at this point a heavy, though not unusual rainfall. Because of the insufficiency of the culvert to carry off the water, and that the embankment acted as a dam, a large body of water was collected above said dam, in such quantities that it broke through the embankment and flowed in large volume and with great force down the stream, overflowing petitioner's bottom land, ruining the crops thereon, and filling up the bed of the stream with mud and sand, to petitioner's damage an amount set forth, aggregating some $400. There was a verdict for plaintiff for $191.75, and defendant's motion for a new trial being overruled, it excepted. The motion was upon the general grounds that the verdict was contrary to law, evidence, etc. Also, because the verdict was excessive.

Further, because the court erred in charging: "The diverting of a stream of water, wholly or partly, from its natural channel, so as to cause it to overflow the lands of another, is such a wrong, if it causes injury, that damages may be recovered from the party causing it." Alleged to be error, because there was no evidence of the diversion of any stream from its natural channel, or any other evidence that would authorize the giving of the charge. Further,

because it makes defendant absolutely liable in case of diversion.

Error in permitting witnesses for plaintiff to testify, over the objection of defendant, that where the culvert formerly existed there is now a culvert leaving an opening of 12 or 15 feet in the embankment, because this was irrelevant. It was not stated in this ground what objection was made to this evidence when offered.

Upon the question as to whether or not the culvert of the railroad company was of sufficient capacity to accommodate the waters which ordinarily might have been expected to flow through it, and as to whether or not the volume of water which was the immediate cause of the damage was the result of an unusual rainstorm, the evidence was conflicting. Upon the other statements of fact contained in the declaration, there was no material conflict in the evidence.

1. We do not think the exception to the charge of the court as stated in the motion for a new trial was well taken. The language complained of in this instruction is substantially the language employed in section 3018 of the code, which gives a right of action for the character of injuries complained of, and is a fair statement of a sound proposition of law.

It will be seen, from reading the ground of the motion wherein complaint is made because the court permitted the plaintiff to testify to certain facts, that it affords no reason for the reversal of a judgment denying a new trial, for the reason that, while it appears that the defendant objected to the introduction of the evidence, it is not stated what objection was made at the time it was offered; therefore we cannot say whether the court ruled properly upon the objection or not. To say in the motion for a new trial that the movant objected to certain evidence, and then say that the objection should have been sustained because the evidence offered was irrelevant, does not imply that at the time it was offered the same reason was assigned why

it should be rejected as was assigned as a reason why a new trial should be granted because of its admission. In other words, there was as to this ground no legal assignment of error, and the court could properly disregard it in passing upon the motion for a new trial.

2. To enter into an extended statement of the conflicting evidence as it was submitted at the trial would not be profitable here. There was evidence from which the jury might have found that the damages recovered resulted from the causes alleged in the declaration; and if this were true, there was a breach of duty upon the part of the railroad company toward the owner whose land was overflowed, and who brought this action. The construction of railways is a public necessity, and in their construction the crossing of running streams is practically unavoidable, and the building of culverts indispensable to the proper operation of the railroad lines. In the construction of their roadways, however, the railroad companies are bound to have due regard for the property rights of adjacent proprietors. Each proprietor along the banks of a running stream is entitled to have the water flow in its accustomed channel, as it would do under natural or normal conditions were its course unobstructed by any other proprietor; and if the proprietor upon the upper stream cause the water to accumulate to such an extent as to precipitate it in unusual quantities upon the land of the proprietor below, whereby he is injured, he is entitled to recover. While a railroad company may lawfully construct embankments across a running stream, it is its duty to provide means for the free passage of the water as it was accustomed to flow. It is in this respect bound to ordinary diligence, and to take such reasonable precautions as ordinary prudence would suggest to save from harm the proprietor of the land below. It is not bound to guard against every possible contingency which may arise, and which may result in injury to the property of others, but it is bound to so construct, keep and maintain its culverts and

embankments as that the accumulation of water from freshets which in the usual course of events are likely to occur, will not cause breaks in such embankments and the consequent inundation of the land lying below. In determining whether or not the precautions taken by the company are adequate and will excuse an overflow, it is proper to take into consideration the location of the stream, the climate, the quantity of usual and ordinary rainfall, the clearings upon the stream, and all those varying conditions peculiar to the locality in which the culvert is constructed, and which might tend to increase the flow of the stream which the culvert was designed to accommodate. If it has adopted measures which under ordinary conditions would be sufficient, it could not be held liable if, because of unusual and unprecedented rainfalls, the culvert so constructed should prove of insufficient capacity to accommodate the unusual accumulation of water; and if injuries result therefrom, such injuries would be attributable rather to the act of God than to the negligence of the company, and it could not be held liable. On this subject see Union Trust Co. *v.* Cuppy, 11 Am. & Eng. R. R. Cas. 562, 26 Kan. 754.

3. Upon the questions of fact involving the negligence of the company, the evidence, while conflicting, was sufficient to authorize the finding of the jury, and there was no error in denying a new trial. *Judgment affirmed.*