35541. WESTERN & ATLANTIC RAILROAD *v.* HASSLER.

DECIDED JUNE 14, 1955—REHEARING DENIED JUNE 28, 1955.

*Walton Whitwell, Mitchell & Mitchell,* for plaintiff in error.

*Pittman, Hodge & Kinney, R. Carter Pittman, J. T. Pope, Jr.,* contra.

QUILLIAN, J. ■ We shall, for the sake of convenience, refer to the plaintiff in error as the defendant and to the defendant in error as the plaintiff, they having occupied those respective positions in the trial court. Occasionally reference will be made to the plaintiff in error as the railroad company.

The plaintiff and defendant are in accord that the evidence demanded a verdict. That is, however, where the unanimity

ceased. The plaintiff maintains that the only legal verdict under the facts disclosed by the evidence was in his favor, and for that reason, if errors were committed, they were harmless to the defendant. The defendant in equal earnestness contends that the evidence authorized no other verdict than one in its favor.

We first discuss the question as to whether the verdict in the plaintiff's favor was authorized by the evidence submitted in the trial of the case.

The railroad company had the right to install culverts through which the waters of the creek might pass in its natural channels. It was the duty of the railroad company to construct the culvert of such dimensions and in such manner as not to impede the flow of the stream to the hurt or inconvenience of proprietors whose lands lay along its course. If its culvert did so obstruct the stream as to cause it to overflow the plaintiff's lands and damage his property, the company is liable in damages. *Southern Ry. Co.* v. *Lester*, 33 *Ga. App.* 136 (125 S. E. 722). However, the defendant was not an insurer of the plaintiff's property against all possible contingencies from inundation. *Georgia R. & Bkg. Co.* v. *Bohler*, 98 *Ga.* 184, 185 (2) (26 S. E. 739). The duty that the law required of it was to construct the culvert so commodious as to accommodate the natural flow of the stream not only in time of floods caused by such rains as usually occur, but also during floods resulting from heavy and unusual rainfalls in the exercise of reasonable care, taking into consideration the history of rainfalls, the climatic conditions, the topography of the terrain, factors the railroad company could have reasonably anticipated if such floods might occur.

If the flood that did occur was so extraordinary and unprecedented that it could not have been foreseen and the damage could not have been prevented by prudential means, the railroad company could not be held liable.

A catastrophe arising from the force of the elements which human intelligence cannot predict nor the ingenuity of man foretell is an act of God. Occasionally our courts have loosely used the expression, in making the pronouncement that what can be attributed to the negligence of man cannot be held to be an act of God, that, if the damages be caused by the combination of an act of God and the fault of man, it will be attributed entirely to

human error. The writer is of the opinion that there is no such thing in the contemplation of the law as a combination of the two. The presence of the one excludes the existence of the other. They are antipathetic one to the other, and the assertion that the one is the cause of damage is to declare the other is not.

In the instant case, the evidence showed that the rainfall at the time of the flood that inundated the plaintiff's property was extraordinary and unprecedented. Not in the memory of the oldest citizens who testified as witnesses, and not for a period of more than fifty years, had so great rain descended in the area drained by the creek. The evidence amply authorized a verdict that the flood resulted from an act of God.

However, there was no evidence as to whether the culvert was constructed in dimensions and in a fashion to meet engineering requirements as a conductor of the waters of the stream.

In *Goble* v. *Louisville &c. R. Co.*, 187 *Ga.* 243, 251 (200 S. E. 259), it is written: "While it is the general rule that where rains are so unprecedented, and the flood caused thereby so extraordinary, that they are in legal contemplation the act of God, one obstructing a natural watercourse will not be held liable, it must appear, in order to give immunity under that rule that the act of God is not only the proximate cause but the sole cause of the injury. And where an unprecedented flood is the cause of the injury, but the prior, coincident, or subsequent negligence of a person obstructing a natural watercourse so mingles with it as to be an efficient and co-operating cause, the obstructor will be held responsible, because his act is causa sine qua non. . . Whether an extraordinary flood is an 'act of God', as that expression is used in the law, is a mixed question of law and fact. The defining and limitation of the term, its several characteristics, its possibilities as establishing and controlling exemption from liability, are questions of law for the court; but the existence or non-existence of the facts on which it is predicated is a question for the jury. It has accordingly been held that the court can not, in an action for damages alleged to have been caused by the negligence of one obstructing a natural watercourse, wherein the defense is that the flood was so extraordinary and unprecedented as to be deemed the 'act of God', determine that the flood was unusual or unprecedented, since that is the determination of a

fact depending on evidence to establish it. The province of the court is to define in proper instructions what would be regarded in such an instance by the law as an act of God, and leave it to the jury to determine whether the evidence is sufficient to establish that the flood in question was an ordinary flood or was an extraordinary flood so unusual and unprecedented in its nature as to amount in law to an act of God."

We conclude, in view of the holding quoted, that it was a question for the jury whether the damage to the plaintiff's property resulted from an act of God or was caused by the fault of the defendant.

■ Ground one of the amended motion for new trial alleges that the court erred in charging the jury: "If you find from the evidence in this case that the defendant railway company constructed or maintained a fill or culvert across Mill Creek, as alleged in the petition, and that the culvert did not have sufficient capacity to take care of the natural flow of Mill Creek after a heavy rain, even though such rain was an extraordinary heavy rain, then I charge you that any damage that may have resulted from the water backing upon and onto the property of the plaintiff in this case, naturally resulting from said obstruction, would be such damages as would authorize you to find damages against the defendant."

The contention is that the charge deprived the defendant of the valid defense that it had exercised ordinary care in constructing and maintaining the culvert large enough to accommodate the natural flow of the creek under any predictable conditions, that it could not anticipate the unprecedented and extraordinary rain that descended, and that the flood which overflowed the plaintiff's lands and damaged his property was caused by an act of God, and did not result from negligence on the defendant's part by so constructing and maintaining the culvert as to impede the flow of the creek.

Webster's New International Dictionary defines the word "extraordinary" as related to accident or casualty, as follows: "Designating an accident, casualty, occurrence, or risk of a class or kind other than those which ordinary experience or prudence would foresee, anticipate, or provide for."

Courts of other jurisdictions have accepted the definition.

"Extraordinary or unprecedented floods are floods which are of such unusual occurrence that they could not have been foreseen by men of ordinary experience and prudence. Ordinary floods are those, the occurrence of which may be reasonably anticipated from the general experience of men residing in the region where such floods happen. Soules *v.* Northern Pac. R. Co., 157 N. W. 823, 830, 34 N. D. 7, L. R. A. 1917A, 501. Extraordinary floods', as used in an instruction, in an action against a railway company for damages from water, that the defendant would not be guilty of such culpable negligence as to make it responsible if it failed to provide against such extraordinary floods as would not have been reasonably foreseen by men of ordinary skill and sagacity, means such floods as are of such unusual occurrence as could not have been foreseen by men of ordinary experience and ordinary prudence. Gulf, C. & S. F. Ry. Co. *v.* Pool, 8 S. W. 535, 537, 70 Tex. 713." 15A Words and Phrases, 688. "The term 'extraordinary floods', within the rule that a railroad company constructing an embankment is not required to make provisions to carry off the water occasioned by extraordinary floods, means such floods as are of such unusual occurrence as cannot be foreseen by men of ordinary experience and ordinary prudence, and differs from 'ordinary floods', which are those, the occurrence of which may be reasonably anticipated from the general experience of men residing in the region where the floods happen. Gulf, C. & S. F. Ry. Co. *v.* Pool, 8 S. W. 535, 537, 70 Tex. 713." Id.

"An extraordinary flood is one of those unexpected visitations whose comings are not foreshadowed by the usual course of nature." Jensen *v.* Buffalo Drainage Dist. of Cloud County, 148 Kan. 712 (84 Pac. 2d 961).

"By extraordinary rainfall is not meant such a downpour of rain as may not have been known to occur, but only such rainfall that is so unusual and extraordinary that men of ordinary prudence would not have anticipated and provided for; but floods such as from climatic and geographical conditions may reasonably be expected, whether of frequent or infrequent occurrences must be taken into consideration in estimating hazards attending the obstructions of water courses." City of Portsmouth *v.* Weiss, 145 Va. 94 (133 S. E. 781, 787).

"While every shower of rain that falls upon the earth is the

act of God, in contradistinction to the act of man, yet an ordinary freshet is not the act of God, in the legal sense which protects a man against responsibility for the non-performance of a contract like that made by this plaintiff. If by skill and labor, the work can be done by man so as to resist the ordinary, or what may be called extraordinary floods, which often occur, but at long intervals and the work is carried away, it cannot be attributed to the act of God; but if what is called a water spout, descends with such overwhelming power and force as to bear off everything before it, and is irresistible, and the strongest work of man cannot stand up against it, then it may be said that man is faultless in the matter, and therefore excused for failure by the law. But such extraordinary and resistless calamities enure as an excuse and relief of both parties." *Doster* v. *Brown,* 25 *Ga.* 24 (71 Am. D. 153).

From the authorities quoted it appears that there are in contemplation of the law two kinds of extraordinary floods: one that is merely unusual, but not so unprecedented or irresistible that it cannot be foreseen and its results forestalled; the other a phenomenon so unusual and irresistible that its disastrous results cannot be anticipated or prevented.

It is clear that the charge instructed the jury that, if the culvert did not have sufficient capacity "to take care of the natural flow of the creek after a heavy rain, the defendant was liable for damages resulting by the plaintiff, even though such rainfall might be within the category of an event that could not in the light of human experience and by the exercise of ordinary care have been foreseen, anticipated, or provided for."

The charge, we think, was subject to the criticism that it deprived the defendant of its defense that the damage to the plaintiff's property resulted from an act of God and was not caused by the defendant's negligence.

Ground two of the amended motion for new trial complains that the court erred in charging the jury: "I charge you that while it is lawful for a railway corporation to construct its tracks across a non-navigable stream and make fills and culverts in order to do so, the construction and maintenance of such fills and culverts or dams so as to obstruct the natural flow of a stream and cause it to back up and overflow the property of a riparian

owner, during floods, renders such corporation liable for the damages proximately resulting from the overflow of the water."

The complaint is that the charge given without qualification imposed upon the defendant railroad company the duty so to construct the culvert that it would accommodate the natural flow of the creek under any conditions, and that, when isolated from and not given in connection with instructions in the charge, confused the jury as to the principles of law applicable to the issues of the case.

Instructions were contained in other portions of the charge, concerning the degree of care required of the defendant in constructing its culvert to accommodate the natural flow of the creek and the defense that, if the damage to the plaintiff's property was caused by an act of God, the defendant railroad company would not be liable, and the charges could have been harmonized with the other excerpt and clearly informed the jury as to the issues, rules, and principles necessary to guide them in their deliberation.

While the case is not reversed because the charge was not so arranged, the principles of law embodied in it would have been more easily understood if the excerpt from the charge excepted to and the portion of the charge referred to in the preceding paragraph had been given in immediate sequence.

An excerpt from the opinion in the case of *Goble* v. *Louisville &c. R. Co.*, 187 *Ga.* 243, supra, reads: "If the proximate or immediate cause of the overflow and consequent damage to the plaintiff's land was the result of the defendant's fault in omitting to keep the opening under the trestle large enough to accommodate the waters of the creek in times of heavy rains, the existence of unusual rainfalls will not relieve it from liability for damages."

But, in immediate connection with the language quoted, the opinion in the *Goble* case continues: "On this question we approve the statement found in 27 R. C. L. 1107, § 40, as follows: 'Some courts have attempted to fix the meaning of "extraordinary" in relation to the frequency of occurrence, holding that such floods as are not of annual occurrence, are extraordinary and the act of God; but the true rule would seem to be that the mere fact that the flood does not occur annually will not make it an extraordinary one, if from the climatic conditions and the char-

acter of the country it is likely to occur, and has been known to occur, with sufficient frequency to warn those living in the vicinity that it may occur at any time. While it is the general rule that where rains are so unprecedented, and the flood caused thereby so extraordinary, that they are in legal contemplation the act of God, one obstructing a natural watercourse will not be held liable, it must appear, in order to give immunity under that rule, that the act of God is not only the proximate cause but the sole cause of the injury."

The opinion in the *Goble* case, when considered in its entirety, is a pronouncement of the established rule that the law imposes upon the railroad companies the duty to exercise ordinary care in providing adequate openings underneath road beds to allow the waters of streams traversed by their lines to flow unimpeded even in the time of heavy and unusual rainfall.

The language of the two excerpts quoted from the opinion in the *Goble* case in the sequence that they there appear was appropriate for instructions to the jury and adapted to the issues of the case.

The third ground of the amended motion for new trial is without merit.

*Judgment reversed. Nichols, J., concurs. Felton, C. J., concurs specially.*

FELTON, C. J., concurring specially. While the petition does not mention negligence eo nomine, I think that the action is based on negligence, and that, therefore, on the one act of negligence alleged, proof of the exercise of ordinary care on the part of the defendant in constructing and repairing the culvert, which is tantamount to proof that the injuries were caused by an act of God, would absolve the defendant of liability as against the act of negligence alleged. In such circumstances the defendant would not be required to not only rebut the one act of negligence charged, but to go further and exclude other possible negligence which might possibly have contributed to the damages but which was not alleged in the petition as an act of negligence.

The evidence was uncontradicted and showed conclusively that the flood was unprecedented, and the evidence did not authorize a finding that the damages would have resulted even if the flood had not been unprecedented. It follows, therefore, that

it was not incumbent on the defendant to prove that it was free from other negligence which might have contributed to the injuries. See *Goble* v. *L. & N. R. Co.*, 187 *Ga.* 243, supra, headnote 4; 27 R. C. L. 1107, § 40. In the *Goble* case it was alleged that debris, sand, and logs collected on the upper side of the trestle, causing partial obstruction of the flow of the stream, which could possibly have made it necessary for the defendant to prove not only an act of God but that the defendant was not negligent in permitting the opening to be obstructed as alleged. That case was on demurrer and can only be dealt with as such. The evidence in the case before us demanded a verdict for the defendant. The court charged the correct law to the effect that the flood had to be unprecedented for the defendant to be relieved. In the first two excerpts from the charge complained of, the trial judge charged an erroneous principle of law, in that they were susceptible to the construction that proof of an unprecedented flood would authorize recovery (*Doster* v. *Brown*, 25 *Ga.* 24, supra), and nowhere in the charge did he call attention to the erroneous excerpts and withdraw or correct them. The third excerpt complained of was error because there was no evidence that the culvert would not take care of a rain that could have been anticipated. The principles involved in this case as to the burden on the defendant to prove additional diligence as well as an act of God differ from the principles in cases where a carrier is sued for loss or damage to freight. In those cases the railroad is an insurer, and upon proof of loss or damage must not only prove an act of God, if relied on by the carrier, but must exclude all negligence. The reason for this requirement in such cases is that the carrier is an insurer and must not only exclude liability as to ordinary care on the question of an act of God, but must go further and exclude the possibility of damage from its negligence entirely, as it seems to be too well settled for discussion that injuries and damage can be attributable to the combination of an act of God and the negligence of a defendant.