## A95A0744. BYRD et al. v. DAUS.

(460 SE2d 819)

JOHNSON, Judge.

This appeal follows a jury verdict in favor of Kevin Daus, M.D., in a medical malpractice action brought by Angela Byrd, individually and as best friend and guardian for Jeffrey A. Byrd, and by the boy's father, Jeffrey D. Byrd. They sought to recover for injuries sustained in connection with Jeffrey A. Byrd's birth.

Angela Byrd was admitted to DeKalb Medical Center for induction of labor when her pregnancy had extended one-and-one-half weeks beyond the expected delivery date for her baby. After rupturing the uterine membranes, Byrd was administered the drug Pitocin to stimulate uterine contractions. Daus, her doctor, was not at the hospital, but had left specific instructions regarding the administration of the drug, and monitored Mrs. Byrd's contraction pattern, as well as the fetal heart rate, via a connection with his home computer.

The drug hyperstimulated the uterus, resulting in an abnormal contraction pattern. Daus instructed the nurse to reduce by half the dose of the drug every 30 minutes. Nonetheless, the abnormal pattern continued. At 6:00 p.m., the fetal heart rate slowed and Daus immediately returned to the hospital, instructing the nurse from his car phone to prepare Byrd for an emergency Cesarean section. Daus was in the operating room when Byrd was brought in. After making an incision, Daus discovered that Byrd's uterus had ruptured. Her baby was immediately delivered, but not before it had suffered extensive neurological damage.

1. The Byrds assert the trial court erred by refusing, after a request, to qualify prospective jurors with regard to relationships they may have with MAG Mutual Insurance Company, Daus' insurance carrier. The trial judge, relying on Judge Beasley's special concurrence in *Franklin v. Tackett*, 209 Ga. App. 448, 450 (433 SE2d 710) (1993), asked if anyone on the jury panel had a financial interest in the case. He explained that he believed this question satisfied the plaintiff's right to exclude persons with an interest in the insurer from the panel, without impermissibly interjecting the issue of insurance into the case. Further, the trial judge noted that he was satisfied that no one on the panel could have a financial interest in MAG Mutual, because that company is owned exclusively by doctors and his review of the jury questionnaires revealed that no one on the panel identified himself or herself as a doctor.

In *Patterson v. Lauderback*, 211 Ga. App. 891, 895-896 (3) (440 SE2d 673) (1994), we acknowledged the method for eliminating questions of the prospective juror panel regarding insurance proposed by Judge Beasley in her special concurrence in *Franklin*, supra, and also suggested that written jury questionnaires might be a viable, less pub-

lic, method for identifying jurors who might not be qualified because of a financial interest in the non-party insurer. *Patterson,* supra at n. 2, p. 895. Interestingly, the trial judge incorporated both of these suggestions in this case, asking if any juror had a financial interest in the outcome of the case, and reviewing the jury questionnaires to ascertain the professions of the panel. Despite our frustration with the rule regarding qualifying a jury panel as to non-party insurers, it remains intact. In both *Patterson* and *Franklin* we were constrained to reverse and remand the cases to the trial court for further proceedings, noting the Supreme Court's long-standing position regarding the qualification of jurors with respect to possible financial interests in a defendant's non-party insurer. See *Atlanta Coach Co. v. Cobb,* 178 Ga. 544, 549-551 (174 SE 131) (1934). "[T]he refusal of the court, upon request by plaintiffs' counsel, to so qualify the jurors creates a presumption of harmful error, which unless in some way rebutted, requires the grant of a new trial. [Cit.]" *Patterson,* supra at 895.

The trial court's conclusion from a review of the jurors' questionnaires that there were no doctors on the panel, does not eliminate the possibility that someone on the panel has a financial interest in MAG Mutual. Even if there were no doctors on the panel itself, any member of one of their immediate families may be a doctor or an employee of the company, both of which could create a financial interest in the company such that its disclosure was mandatory. Under these circumstances, the presumption of harmful error arising from the trial court's failure to qualify the jury panel after plaintiff's request has not been rebutted. The trial court erred in failing to qualify the jury panel with regard to MAG Mutual.

2. The trial court did not err in refusing to admit a document called the Administration of Pitocin Protocol. The protocol, which was in effect at DeKalb Medical Center in December 1992, was a guide to be used by nurses when a doctor was not present or in communication with the hospital staff. Byrd wanted to use the protocol, which indicates terminating the administration of Pitocin rather than halving the dose in the event of sustained contractions as ordered by Daus, to show that Daus' treatment was contrary to the regimen recommended in the protocol. Daus argues the protocol was not probative of the standard of care for administration of Pitocin by doctors, and the hospital and nurses were not on trial. Specifically, Daus states in an affidavit submitted in support of his motion in limine to exclude the document, that the protocol was not in effect during Byrd's labor and delivery because he had given specific orders to the nurse regarding the administration of the Pitocin to Byrd. At trial, the nurse who cared for Byrd testified that Daus had been readily available to her at all stages of Byrd's labor and had given her specific orders regarding the administration of Pitocin. There was no evidence

that the protocol was consulted in this case.

The only inquiry at trial was whether Daus was negligent; neither the hospital nor the nurse was on trial. Therefore, any document which established policy for the nurses to follow in the absence of specific directives from a doctor was not relevant to the issue being tried in this case and was, at most, collateral to that issue. "[E]vidence of collateral or other facts which is incapable of affording any reasonable presumption or inference as to a principal fact or matter in dispute, or evidence which is too remote, is irrelevant and inadmissible." *Thompson v. Moore*, 174 Ga. App. 331 (1) (329 SE2d 914) (1985), rev'd in part on other grounds, 255 Ga. 236 (336 SE2d 749) (1985). Because nothing in the document could assist the jury in making a determination regarding a principal fact or matter in dispute, the trial court did not err in refusing to admit the protocol.

3. The trial court refused to charge the jury on the theory of concurrent negligence, which the Byrds now assert was error. Daus testified that he believed Byrd's uterus ruptured during labor due to a weak spot. He identified several procedures described in Byrd's medical history which could have caused a weak spot, including a dilation and curettage performed after a miscarriage, a previous forceps delivery and a cerclage, a procedure in which the cervix is temporarily stitched shut. The medical records showed that during the cerclage procedure, performed in this pregnancy by another doctor, one of the instruments tore the cervix, necessitating sutures. Daus testified that the tear was not the result of a deviation from the requisite standard of care by the other doctor, but was an event which could occur during such a procedure. No expert was called to offer an opinion concerning whether the cerclage had been performed negligently. "A charge on an issue not warranted by the evidence should not be given to the jury. Substantively correct or not, a charge which is not authorized by the evidence is presumed to be harmful." (Citations and punctuation omitted.) *Boulden v. Fowler*, 208 Ga. App. 89, 90 (2) (429 SE2d 692) (1993). Because there was no evidence presented that the other doctor was negligent, a charge on concurrent negligence was not warranted and the trial court did not err in refusing to give the Byrds' requested charge on that issue.

4. Finally, the Byrds argue that the trial court erred in giving defendant's request to charge no. 18 because it gave the appearance of the court's approval of Daus' failure to be at his patient's bedside.

The charge given was as follows: "I charge you ladies and gentlemen, that a physician is not necessarily expected, in the exercise of good medical practice, to remain at the bedside of a patient during such patient's stay in the hospital. The doctor may leave the actual fulfillment of his prescribed treatment to others less skilled if this be in accordance with the practice of the profession generally under the

same or similar circumstances."

"The true rule is that a physician or surgeon is not expected to remain in constant attendance at the patient's bedside, but may leave to others the duty of carrying out his prescribed treatments, with the right to assume that nurses employed by the hospital are competent to perform the duties which they are assigned."

"A request to charge must embody a correct, applicable and complete statement of law, legal and perfect in form and adjusted to the pleadings and evidence; it must not be argumentative or seek an expression of opinion on the part of the court; and it must not be so phrased as to have tendency to confuse and mislead the jury or to becloud the issues in the case. [Cits.]" *Cohen v. Sapp*, 110 Ga. App. 413, 415 (2) (138 SE2d 749) (1964). The Byrds concede this charge is a correct statement of the law, but contend the charge gave the impression that the court condoned Daus' treatment. During the charge conference, appellants asked the judge to add the qualifying phrase: "The question of whether a physician should be at the patient's bedside is a question for you to determine based on all the evidence and circumstances presented. . . ." The judge declined to preface the charge with that language, but followed the challenged charge with the following instruction: "Now, what the physician should or should not have done in this case is for you, the jury, to decide." Pretermitting whether the language in the charge as given might have improperly reflected the court's opinion, the final charge clearly informed the jury that it was the final arbiter of whether the doctor's failure to be at Byrd's bedside constituted negligence. Therefore, we conclude that the charge, as given, was not error.

*Judgment reversed. Birdsong, P. J., and Smith, J., concur.*

DECIDED JULY 11, 1995 —
RECONSIDERATION DENIED JULY 26, 1995 — ▮▮▮▮▮▮

*Williams & Henry, Phillip C. Henry, Harvey R. Spiegel,* for appellant.

*Alston & Bird, Judson Graves, Lawrie E. Demorest, Frederick C. Dawkins,* for appellee.