## A99A0132. STRANGE et al. v. BARTLETT et al.
### (513 SE2d 246)

Judge Harold R. Banke.

After a rainy day rear-end collision, David C. Strange and Eileen Strange sued the driver of the truck, John Michael Bartlett, and Bartlett's employer, Bartlett Heating & Cooling, Inc. The Stranges sought special damages in excess of $100,000. They appeal the defense verdict.

The underlying events arose as David Strange was proceeding northbound in the right lane behind a taxi. After the taxi driver turned on his left turn signal and moved into the center lane, Strange did likewise. After moving into the center lane, the cab driver braked then slowed to a stop. Strange came to a stop behind him. As Strange waited for the taxi to complete its turn and looked to see if he could go around it, Bartlett rear-ended him, knocking his vehicle into the taxi. An ambulance transported Strange to a hospital. The responding officer ticketed Bartlett for "following too closely." Bartlett entered a guilty plea and paid the fine for that offense.

At trial, Strange and Bartlett vigorously contested the road and weather conditions at the time of the collision. Their testimony completely diverged as to whether the roadway had any standing water and whether it had been raining heavily. Strange testified that just moments before the impact, he had had no difficulty stopping behind the taxi in the "light rain." According to Strange, due to the downhill grade, there was no standing water. Although Bartlett testified that from 100 to 200 feet he saw that traffic ahead had stopped, he also claimed that he "could barely make the image out," because of an "extremely heavy downpour." Bartlett claimed that standing water prevented his tires from grabbing the pavement so that when he braked, his truck hydroplaned. Bartlett admitted that traffic around them "seemed to be flowing fairly well."

The investigating officer testified that he had interviewed all three drivers at the scene. Bartlett told him that after he saw the vehicle up ahead, he was not able to stop in time. According to the officer, in recounting the events, Bartlett made no mention whatsoever about having hydroplaned. The officer testified that this portion of roadway had good drainage due to its downhill slope. When writing his incident report, the officer did not consider the rain so unusual as to have been a contributing factor to the collision. According to the officer, had unusual weather or standing water created a road hazard, he would have indicated that in his report and he did not do so.

Enumerating six errors, David and Eileen Strange (collectively "Strange") appeal the jury verdict. *Held*:

1. In two enumerations, Strange contends that the court erred by

instructing the jury over objection on an "act of God" based on OCGA § 1-3-3 (3) and on "impeding the flow of traffic" based on OCGA § 40-6-184.

Jury charges must be legal, apt, and adjusted to the evidence or some appropriate legal principle. *Mattox v. MARTA*, 200 Ga. App. 697, 698 (2) (409 SE2d 267) (1991). Where any portion of a requested charge is inapt or incorrect, the trial court should refuse to give it. Id. at 699 (4). Accord *Byrd v. Daus*, 218 Ga. App. 145, 148 (4) (460 SE2d 819) (1995) (requested charge should not becloud the issues).

By definition, the legislature constricted an "act of God" to mean "an accident produced by physical causes which are irresistible or inevitable, such as lightning, storms, perils of the sea, earthquakes, inundations, sudden death or illness. This expression excludes all idea of human agency." OCGA § 1-3-3 (3). Plainly, the statutory definition incorporates three basic elements: (1) an accident *produced by* (2) an irresistible or inevitable force of nature or God, (3) *which excludes* all idea of human agency or conduct. OCGA § 1-3-3 (3). In other words, an "act of God," not an act of man, must solely cause the accident.

But here, the trial court altered and expanded the statutory definition. Instead of instructing that an act of God excludes all human agency, the court charged that an act of God "is not due to any human agency." The court added: "[a]cts of God are events of nature, which are so extraordinary in character that human scale and foresight by the exercise of proper care and caution cannot provide against them."[1] By modifying the statutory definition, the court improperly injected consideration of human factors into the calculus. But where damages are caused by the combination of an act of God and the fault of man, such damages must be attributed entirely to human error. *Western & Atlantic R. v. Hassler*, 92 Ga. App. 278, 280-281 (1) (88 SE2d 559) (1955). "The presence of the one excludes the existence of the other." Id. at 281.

Even had the trial court not misstated the law, the applicability of such an instruction is problematic. Bartlett did not testify that he was unable to stop because the roadway had been washed away or a current swept up his truck, but because *he* could not control his vehicle while *he* braked. See *Sampson v. Gen. Elec. Supply Corp.*, 78 Ga. App. 2, 8 (3) (50 SE2d 169) (1948) ("act of God" applies in the legal sense only to climatic variations and the like). See *Central Ga. EMC Corp. v. Heath*, 60 Ga. App. 649, 652 (4 SE2d 700) (1939) ("[a]n act

---

[1] It further charged, "[i]f you find that the incident or damages for which the Plaintiff seeks recovery resulted from an act of God, then the Plaintiff would not be entitled to recover. And it would be your duty to return a verdict in favor of the Defendants. There can be no recovery against the Defendants for damages or injury caused by an act of God."

which may be prevented by the exercise of ordinary care is not an act of God").

Notwithstanding Bartlett's claim to the contrary, *Jump v. Benefield*, 193 Ga. App. 612, 614 (2) (388 SE2d 864) (1989), is distinguishable both on its facts and on the law in its instruction. In *Jump*, unlike here, the court charged: "the term 'act of God' in its legal sense applies only to events in nature so extraordinary that the history of climatic variations and other conditions in the particular locality affords no reasonable warning of them." (Punctuation omitted.)

Similarly, Bartlett's reliance on *Feathers v. Wilson*, 157 Ga. App. 753, 754 (2) (278 SE2d 434) (1981), is misplaced. In *Feathers*, the trial court defined "an act of God" as follows: to mean " 'generally speaking, some unnatural phenomena and totally unexpected in the natural world, such as lightning striking places where lightning doesn't usually strike, a meteor falls, a tidal wave and earthquake. Those things which are called act of God. Some unusual unnatural phenomena.' " Id. at 754 (2). Here, the instruction diverged from these basic concepts.

Further, the instruction on impeding the flow of traffic did not conform to the evidence adduced at trial. *Gaffron v. MARTA*, 229 Ga. App. 426, 431 (2) (494 SE2d 54) (1997). The court charged, "[t]he law in Georgia also states that no person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic, except when reduced speed is necessary for safe operation." Here, Strange was not driving slowly but had come to a complete stop behind a taxi which had halted to execute a left turn. Compare *Hall v. Buck*, 206 Ga. App. 754, 756 (2) (426 SE2d 586) (1992) (tractor-trailer had not reached a safe speed after pulling out).

Notwithstanding Bartlett's contrary claim, the transcript of the charge conference establishes that Strange articulated precise and specific reasons for excepting to these two charges. Compare *Allstate Ins. Co. v. Justice*, 229 Ga. App. 137, 140 (3) (493 SE2d 532) (1997) (objections must enable trial court to evaluate nature of points raised). Strange then properly renewed his objections after the court instructed the jury. *Smith v. Curtis*, 226 Ga. App. 470, 471 (1) (486 SE2d 699) (1997).

Based on the record before us, we cannot say that these charges did not prejudice and becloud the jury's determination of fault. *Silvers v. Kimbell*, 219 Ga. App. 482, 484 (465 SE2d 530) (1995); *Byrd*, 218 Ga. App. at 148 (4). Therefore, we reverse. *Gaffron*, 229 Ga. App. at 432.

2. In light of the above holding, we need not reach the remaining enumerations of error.

*Judgment reversed. McMurray, P. J., and Andrews, J., concur.*

Decided February 26, 1999.

*Joseph M. Todd*, for appellants.
*Downey & Cleveland, Russell B. Davis*, for appellees.