**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 18, 2019**

# In the Court of Appeals of Georgia

A19A2284. HEAD v. DE SOUSE.

BARNES, Presiding Judge.

This personal injury case arises out of an automobile accident in which Katherine Glynn Head struck Jadilson Silva de Souse and his dog as they were walking across a parking lot entrance. De Souse sued Head for negligence and sought compensatory and punitive damages. Head answered, denying liability, and asserted an act of God defense. Following discovery, the trial court entered an order denying Head's motion for summary judgment as to de Souse's punitive damages claim and granting de Souse's motion for summary judgment as to Head's act of God defense. Head appeals these summary judgment rulings. For the reasons discussed below, we reverse the trial court's denial of Head's motion for summary judgment on de Souse's punitive damages claim, and we affirm the court's grant of de Souse's motion for summary judgment on Head's act of God defense.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). "Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met." *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010). In reviewing the grant or denial of summary judgment, we "view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." (Citation and punctuation omitted.) Id.

So viewed, the record reflects that on the afternoon of February 4, 2016, Head, who was then 16 years old, was driving from her high school to the Costco on Windsor Parkway. De Souse was walking his dog on the sidewalk near the Costco. As Head made a right turn into the Costco parking lot, she struck de Souse and his dog as they were walking across the parking lot entrance. The police arrived on the scene, and Head was issued a citation for failure to yield to a pedestrian. As a result of his injuries, de Souse was transported to the hospital by ambulance. De Souse

subsequently had surgery on his knee and was unable to work after the accident. His dog also sustained injuries.

After de Souse sued Head for negligence, discovery ensued. In her deposition, Head testified there were trees on both sides of the street leading up to the entrance of the Costco parking lot that obscured her view as she was driving. Head further testified that when she made the right turn into the Costco parking lot, the sun temporarily blinded her from seeing de Souse and his dog in the crosswalk. However, Head acknowledged that she had been to the same Costco approximately 15 times before the accident, had used the same entrance on those prior occasions, and had previously driven to Costco "on sunny days." Head testified that before the accident, she had been driving for about 25 minutes, and the sun had been bothering her during the trip. Head admitted that she owned three pairs of sunglasses and had used them in the past when driving during sunny weather conditions, but she did not have them with her that day. Head also testified that she had failed to use her sun visor during the trip, which would have helped block the sun.

Also during her deposition, Head admitted to calling her father and texting on her cell phone during her trip to Costco, and she acknowledged that it was illegal

3

under Georgia law for her to do so.[1] But Head testified that her father did not answer the phone call, that she only texted while stopped at red lights, and that she was not using her phone at the time of the accident. Head testified that her driver's license had never been suspended or revoked, she had never been arrested, she had never been in a prior motor vehicle accident, and she had no prior traffic citations other than the one she received in this case.

Among other claims and defenses in the litigation, de Souse sought punitive damages based on Head's texting and driving, and Head asserted as an affirmative defense that the accident was the result of an act of God. De Souse moved for summary judgment as to Head's act of God defense,[2] and Head moved for summary

---

[1] See former OCGA § 40-6-241.1 (b) ("Except in a driver emergency and as provided in subsection (c) of this Code section, no person who has an instruction permit or a Class D license and is under 18 years of age shall operate a motor vehicle on any public road or highway of this state while engaging in a wireless communication using a wireless telecommunications device."). See also former OCGA § 40-6-241.1 (a) (1) (defining "engage in a wireless communication" to mean "talking, writing, sending, or reading a text-based communication, or listening on a wireless telecommunication device"). The General Assembly repealed OCGA § 40-6-241.1 as part of the Hands-Free Georgia Act, effective July 1, 2018. See Ga. L. 2019, p. 127, § 5. See also OCGA § 40-6-241 (c) (restricting use of wireless telecommunications devices and stand-alone electronic devices by motor vehicle drivers).

[2] De Souse also sought spoliation sanctions against Head and attorney fees pursuant to OCGA § 9-15-14. The trial court denied spoliation sanctions and attorney

4

judgment as to de Souse's punitive damages claim. The trial court granted summary judgment to de Souse on Head's act of God defense, concluding that the bright sunlight encountered by Head when turning into the parking lot was not an unpredictable natural catastrophe. The trial court denied summary judgment to Head on de Souse's punitive damages claim, stating that the issue of punitive damages is normally for the jury and that "[t]here exists no guaranty that the jury would not be able to grant such damages based on whatever facts are presented at trial."

1. Head contends that the trial court erred in denying her motion for summary judgment on de Souse's punitive damages claim. We agree.

To prevail on summary judgment, "a defendant who will not bear the burden of proof at trial need not affirmatively disprove the [plaintiff's] case, but may point out by reference to the evidence in the record that there is an absence of evidence to support any essential element of the [plaintiff's] case." *Cox Enterprises v. Nix*, 274 Ga. 801, 804 (2) (560 SE2d 650) (2002). "Where a defendant moving for summary judgment discharges this burden, the [plaintiff] cannot rest on [his] pleadings, but rather must point to specific evidence giving rise to a triable issue." (Citation and punctuation omitted.) *Cowart*, 287 Ga. at 623 (1) (a).

fees, and de Souse has not appealed those rulings.

5

Guided by these principles, we turn to our law concerning punitive damages and its particular application in automobile accident cases. Punitive damages are authorized "only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (b).

> And it is well settled that negligence, even gross negligence, is inadequate to support a punitive damages award. Something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage. In cases involving automobile collisions, punitive damages are authorized when the accident results from a pattern or policy of dangerous driving, such as excessive speeding or driving while intoxicated, but not when a driver simply violates a rule of the road.

(Citations and punctuation omitted.) *Lindsey v. Clinch County Glass*, 312 Ga. App. 534, 535 (718 SE2d 806) (2011). See *Brooks v. Gray*, 262 Ga. App. 232, 233 (1) (585 SE2d 188) (2003).

In his brief opposing Head's motion for summary judgment, de Souse argued that the evidence that Head was talking and texting on her cell phone in violation of Georgia law during her trip leading up to when she struck him and his dog would

6

support an award of punitive damages.[3] But motor vehicle and traffic-related violations that are not the proximate cause of the automobile accident in question generally will not support an award of punitive damages.[4] See *Doctoroff v. Perez*, 273 Ga. App. 560, 561-562 (615 SE2d 623) (2005) (defendant's action of driving without a valid license was not proximate cause of accident and therefore did not support punitive damages claim); *Brooks*, 262 Ga. App. at 233 (2) (fact that 16-year-old defendant was driving in early morning hours, even though his license did not permit him to drive between the hours of 1:00 a.m. and 5:00 a.m., could not support punitive damages award, given that his "driving after 1:00 a.m. was not the proximate cause of the accident; rather, it was his crossing the centerline that caused the accident").

---

[3] De Sousa also argued that Head's failure to take precautionary measures, such as wearing sunglasses or using the car's sun visor, to ensure that she was driving safely in the sun would support an award of punitive damages. However, as noted above, negligence, even gross negligence, is insufficient to support a punitive damages award. *Lindsey*, 312 Ga. App. at 535.

[4] It is true that a defendant driver's conduct of leaving the scene of an accident may support an award of punitive damages. See *Langlois v. Wolford*, 246 Ga. App. 209, 210-211 (1) (539 SE2d 565) (2000); *Battle v. Kilcrease*, 54 Ga. App. 808, 809-810 (189 SE 573) (1936). "[Those] cases are distinguishable from the present one, however, because the act of leaving the scene of the collision creates a risk of further harm to an injured party who may not be able to contact authorities for help." *Benton v. Anderson*, 295 Ga. App. 190, 191 (671 SE2d 238) (2008). In the present case, Head stayed at the scene of the accident.

And, here, Head testified that she was not using her phone at the time of the accident, and de Souse did not offer any witness testimony, cell phone records, or other evidence to rebut Head's testimony in this regard. While de Souse argued that Head's testimony was self-serving and that a jury should determine her credibility,

> a witness's uncontradicted testimony cannot simply be disbelieved in order to eliminate the evidence it provides. Rather, on summary judgment, what one witness says on a material point must be genuinely contradicted by some other evidence – what another witness says, a prior statement by the witness, or a document or other piece of physical evidence. Once the pleadings are pierced with actual evidence, the plaintiff must point to admissible evidence showing a genuine issue of fact as summary judgment cannot be avoided based on mere speculation or conjecture.

(Citations and punctuation omitted.) *Elder v. Hayes*, 337 Ga. App. 826, 831 (1) (788 SE2d 915) (2016). See *Cowart*, 287 Ga. at 633-634 (3) (c). Accordingly, given the uncontroverted evidence that Head was not using her cell phone at the time of the accident, her phone-related conduct was not the proximate cause of the accident and could not support a punitive damages claim. See *Doctoroff*, 273 Ga. App. at 561-562; *Brooks*, 262 Ga. App. at 233 (1).

Furthermore, separate and apart from the proximate cause issue related to Head's use of her cell phone, "[i]n this case, there [was] no evidence that [Head] was speeding, driving while under the influence, or that [she] had a history of distraction-related accidents, traffic violations, or other evidence that would show a pattern of dangerous driving or other aggravating circumstances so as to authorize an award of punitive damages." *Lindsey*, 312 Ga. App. at 536. For this additional reason, the evidence fell short of providing a basis for an award of punitive damages. See *Archer Forestry v. Dolatowski*, 331 Ga. App. 676, 678 (1) (771 SE2d 378) (2015) (reversing trial court's denial of defendant's motion for summary judgment on punitive damages claim, where there was evidence that the defendant driver was traveling slightly over the speed limit and was talking on his cell phone when the collision occurred, but no evidence of a pattern or practice of dangerous driving by the defendant, such as excessive speeding or driving while intoxicated); *Mastec North America v. Wilson*, 325 Ga. App. 863, 867-868 (755 SE2d 257) (2014) (reversing trial court's denial of defendant's motion for summary judgment on punitive damages claim, where defendant driver was talking on his cell phone at the time of the accident and pled guilty to the misdemeanor traffic violation of "too fast for conditions," but there was no evidence that he was violating the posted speed limit, and he had no

9

history of any prior accidents resulting from traffic violations or of other conduct showing a pattern or policy of dangerous driving); *Lindsey*, 312 Ga. App. at 535-536 (affirming trial court's grant of defendant's motion for summary judgment on punitive damages claim, where there was evidence that defendant driver frequently used his cell phone while driving and was distracted by looking up a number on his phone when the accident occurred, but no evidence that he had a history of distraction-related accidents, traffic violations, or other conduct showing a pattern of dangerous driving or other aggravating circumstances). Compare *Langlois*, 246 Ga. App. at 210-212 (1) (punitive damages authorized where defendant driver left the scene of the accident, was intoxicated, and had a history of DUIs and moving traffic violations).

Because the facts in this case could not support an award of punitive damages against Head as a matter of law, the trial court erred in denying Head's motion for summary judgment on de Souse's punitive damages claim.

2. Head also contends that the trial court erred in granting de Souse's motion for summary judgment on Head's act of God defense. We disagree.

A plaintiff who moves for summary judgment on an affirmative defense has the burden of piercing that defense. *Clay v. Oxendine*, 285 Ga. App. 50, 56 (1) (645 SE2d

553) (2007). If the plaintiff meets that burden, the burden then shifts to the defendant to point to evidence showing a genuine issue of material fact for trial. Id.

A claim that an automobile accident was caused by an act of God rather than the fault of the defendant is an affirmative defense. See *Lewis v. Smith*, 238 Ga. App. 6, 7 (517 SE2d 538) (1999).

> By definition, the legislature constricted an "act of God" to mean "an accident produced by physical causes which are irresistible or inevitable, such as lightning, storms, perils of the sea, earthquakes, inundations, sudden death or illness. This expression excludes all idea of human agency." OCGA § 1-3-3 (3). Plainly, the statutory definition incorporates three basic elements: (1) an accident produced by (2) an irresistible or inevitable force of nature or God, (3) which excludes all idea of human agency or conduct. OCGA § 1-3-3 (3). In other words, an "act of God," not an act of man, must solely cause the accident.

(Emphasis omitted.) *Strange v. Bartlett*, 236 Ga. App. 686, 687 (1) (513 SE2d 246) (1999). "The term 'act of God' in its legal sense applies only to events in nature so extraordinary that the history of climatic variations and other conditions in the particular locality affords no reasonable warning of them." (Citation and punctuation omitted.) *Sampson v. General Elec. Supply Corp.*, 78 Ga. App. 2, 8 (3) (50 SE2d 169) (1948). An act of God refers to an occurrence that is "totally unexpected in the natural

world," such as a lightning strike in a location where a strike normally does not occur, an earthquake, a meteor, or a tidal wave. (Citation and punctuation omitted.) *Strange*, 236 Ga. App. at 688 (1).

Here, de Souse pierced Head's act of God defense by pointing to evidence that the automobile accident was caused all or in part by the fault of Head rather than a force of nature, given that Head testified that she failed to wear her sunglasses or put down the sun visor on her car despite the sunny weather conditions. See *Strange*, 236 Ga. App. at 687 (1) (act of God defense not viable where the plaintiff's injuries were caused all or in part by the fault of the defendant). The burden then shifted to Head to point to evidence showing a genuine issue of material fact with respect to her defense, see *Clay*, 285 Ga. App. at 56 (1), but she failed to point to any evidence that the sunlight she encountered was so extraordinary and unexpected as to render the accident that occurred inevitable.

As previously noted, Head acknowledged in her deposition that while sunlight obscured her vision when she turned into the Costco parking lot, she had previously driven the same route on multiple occasions under sunny weather conditions. Head further admitted that she had been driving for approximately 25 minutes before the accident, that it had been "sunny the entire drive," and that the sun had been

bothering her prior to the accident. In light of her testimony, Head failed to point to any evidence that encountering bright sunlight while driving was an unexpected natural occurrence or that she had no reasonable warning that it might obscure her vision.[5] It follows that the trial court committed no error in granting summary judgment to de Souse on Head's act of God defense. See *Sampson*, 78 Ga. App. at 8 (3) (concluding that evidence of heavy rain did not support an act of God defense, where there had previously been other heavy rains in the area). Compare *Western & Atlantic R. v. Hassler*, 92 Ga. App. 278, 281 (88 SE2d 559) (1955) (concluding that there was a jury issue as to whether the damage to the plaintiff's property was caused by an act of God or the fault of the defendant, where there was evidence that "extraordinary and unprecedented" rainfall in an amount greater than could be remembered "by the oldest citizens who testified as witnesses" had inundated the property).

*Judgment affirmed in part and reversed in part. Mercier and Brown, JJ., concur.*

---

[5] Head also testified that the trees lining the road leading to the parking lot entrance obscured her vision, but, as noted above, she admitted that she had driven that same route multiple times. As with the sunlight, the trees lining the roadway were not an unexpected natural occurrence.

13